JOSEPH JOHNSON *v.* STATE OF INDIANA.

[No. 1173S241. Filed November 26, 1974, Rehearing
denied February 4, 1975.]

*Robert J. Fink*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Henry O. Sitler*,
Deputy Attorney General, for appellee.

DEBRULER, J.—Appellant, Joseph Johnson, was indicted
and convicted of Kidnapping, IC 1971, 35-1-55-1, being Burns

§ 10-2901, and of Assault and Battery with Intent to Gratify Sexual Desires, IC 1971, 35-1-54-4, being Burns § 10-403 (1974 Supp.). After waiver of jury trial, appellant was tried before Judge Harold Kohlmeyer in the Marion Criminal Court. He was sentenced to life imprisonment for Kidnapping and to two to twenty-one years for Assault and Battery with Intent to Gratify Sexual Desires. He has now perfected an appeal to this Court on the following grounds: (1) The trial court erred in overruling appellant's motion for psychiatric examination prior to pronouncement of judgment; (2) The trial court abused its discretion in not requiring the prosecution to produce appellant's clothes at trial; (3) The evidence was not sufficient to support the conviction for Kidnapping.

Appellant introduced no evidence.

Melinda Newberry, age 8, testified that, on June 26, 1972, appellant picked her up and carried her across the street and along the railroad tracks about a city block away from home. She did not know him and refused to go with him. She struggled, but he "drug" her. He had a knife which he took out of his pocket, and he told her he would kill her if she cried. He carried her into a small room under the railroad embankment, where he took off her pants and rubbed his penis against her.

David Mort testified that he was looking out his office window and saw appellant carry Melinda along the railroad tracks, put her down, leave for a moment, and then return and carry her along a pathway. Suspicious, Mort and his wife drove around the area. When he saw the two doors in the embankment, he went over to check them. Hearing noises behind one of them, he yelled for appellant to come out. Though it was dark inside, he could see appellant stand up. When appellant emerged, his fly was open, and his penis was exposed and erect. He denied that the girl was inside, but she began to cry and came out. As she stood up, her dress fell down. Appellant told Mort that he was her father. Mort's wife called the police.

Clifford Adams, an Indianapolis Police officer, testified on cross-examination, that when he saw appellant the morning after his arrest, he was still wearing his street clothes. Adams did not remember seeing mud on appellant's trousers or shirt.

Appellant's first contention is that the evidence is insufficient to support the conviction for Kidnapping. The relevant statute reads:

> "Whoever kidnaps, or forcibly or fradulently carries off or decoys from any place within this state, or arrests or imprisons any person . . . unless it be in pursuance of the laws of this state or of the United States, is guilty of kidnapping. . . ." Burns § 10-2901, *supra.*

We believe that the evidence sustains a finding of forcibly carrying the child off from a place within the State.

Appellant's principal argument is that he employed no force. State's witness Mort did not testify that Melinda was struggling. He saw appellant put her down, go away a moment and then return. Melinda testified that she was less than a block from home.

The use of force is not limited to occasions when the victim physically struggles to get away and attempts to escape at each moment. Clearly, a baby could sleep peacefully as the kidnapper carried him away. The evidence must support the victim's avowal of non-consent, but the reasonableness of his response must be judged individually, based on his strength, intelligence, and maturity and the character of his alleged kidnapper.

In this case, the eight-year-old child said "no" when appellant asked her to come with him. He then, in her words, "drug" her. She did not know him. He had a knife with him and threatened to kill her if she cried. When he carried her into the small room, she asked to be let down. Under strict cross-examination, Melinda testified that appellant took his knife out of his pocket and showed it to her. She testified that she struggled to get away, but could not run away because

he was carrying her. She said that she had never been to the shack before. We believe that the judge could have found that there was adequate evidence of force against an eight-year-old child.

Appellant argues that kidnapping is not indicated when he carried the child only a city block away. In *Cox* v. *State* (1932), 203 Ind. 544, 177 N.E. 898, defendant had carried a child ninety feet before he put her down. The Court held that defendant had kidnapped the child within the terms of the statute. "A place is any portion of space regarded as distinct from all other space." We see no reason to limit the kidnapping statute to certain distances. It attempts to reach the crime of removing a person from a place where he should be, without his consent.

Appellant also presents the argument that there was no showing that he was not acting "in pursuance to the laws of this State or of the United States." In *Lewis* v. *State* (1969), 252 Ind. 454, 250 N.E.2d 358, the Court explained the meaning of that phrase:

> "A close reading of the statute would indicate such language has been inserted to protect a person who has the legal authority to forcibly carry off an individual, as for example with a parent and his child or a police officer and a suspected criminal. It would therefore not be necessary to show that the defendant was in fact breaking the law of this state as appellee seems to be arguing, but rather that the defendant was not in such a relationship to the victim as to afford him immunity under this statute." 252 Ind. at 458.

Here, since appellant was not Melinda's parent or an officer of the government, the court could reasonably infer that appellant had no relationship to her which would afford him immunity under the statute.

We consider next the trial court's ruling on appellant's motion for psychiatric examination after the verdict and prior to pronouncement of sentence. When appellant made the motion in 1973, a statute provided:

"When the defendant in a criminal cause appears for judgment and the court, either from his own knowledge or upon the suggestion of any person, has reasonable ground for believing the defendant to be insane, the question of his insanity shall be determined by a jury of twelve (12) qualified jurors. . . ." IC 1971, 35-5-3-3, being Burns § 9-2217a.

The test of competence to stand trial is whether defendant has "sufficient present ability to consult his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him." *Dusky* v. *U.S.* (1960) 362 U.S. 402, 80 S. Ct. 788, 789, 4 L. Ed. 2d 824; *Tinsley* v. *State* (1973), 260 Ind. 577, 298 N.E.2d 429, 433. If he does not understand, any criminal trial denies him due process. The trial court must hold a hearing on sanity if the matter before the court raises a bona fide doubt of defendant's competence. *Pate* v. *Robinson* (1966), 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815; *Cook* v. *State* (1972), 258 Ind. 667, 284 N.E.2d 81. Appellant's counsel argues that appellant's general illiteracy and his behavior at the time he waived jury trial and at the time he determined that he would not take the stand or call witnesses on his behalf raised a bona fide doubt.

Appellant is not illiterate; he can read and write a little. And, we would not agree that illiteracy is indicative of mental incompetence. On the record before us is an examination of appellant, conducted by both defense counsel and the court, relative to his understanding of the right to trial by jury and consequences of jury waiver. This record does not indicate that the appellant lacked understanding or presence of mind, or that the court or counsel questioned his competence. Appellant's responses are clearly stated and cogent. The decision to have trial to a judge was reasonable, under the circumstances. Appellant's decision not to take the stand is also documented. At the conclusion of all other testimony, counsel for appellant asked the judge permission to hold an informal discussion with appellant on the stand. After counsel had ex-

plained the right to testify and to call witnesses, he asked appellant if he had any questions. He answered:

"I just want to know if my past record can hurt me if I testify. I mean, can it be used against me."

From counsel's affirmative answer, Johnson reasonably could have been convinced that he should not testify. Although appellant behaved rationally at trial, a history of serious mental disorders, commitment to mental hospitals, or a prior court order of incompetency would put his competency into question. *E.g., Pate* v. *Robinson, supra; Tinsley* v. *State, supra.* However, nothing in appellant's record indicates that he was incompetent. It was not error to deny his motion for psychiatric examination.

Appellant's final claim of error is the court's denial of a post-trial defense motion to require the prosecution to produce appellant's street clothes, so that the judge might see that there was no mud or dirt on them. Although appellant's counsel was aware of the existence of the clothes at the time of trial, he made no motion to produce. Production of appellant's street clothes would have allowed the judge to see, as well as hear from Sargeant Adams' testimony, that they were not dirty. Presumably defense intended that the judge draw the inference that appellant never stooped down to touch Melinda. Certainly the clothes would have been admissible. However, we do not believe their omission from the evidence was significant for the outcome of the trial. Their cleanliness had little probative value, since they were not inspected until the morning after the arrest and since appellant could have stayed clean even if he were not in a standing position. Furthermore, this demonstrative evidence was cumulative after Adams' testimony.

Reliance upon *Brady* v. *Maryland* (1963), 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215, and *Giles* v. *Maryland* (1967), 386 U.S. 66, 87 S. Ct. 793, 17 L. Ed. 2d 737, is not well placed here. The evidence at stake here, unlike that considered

in those cases, is cumulative and of little impórt. And more importantly, the defense was aware of the existence and relevance of the clothing during the trial and in time to make a timely motion for its production. Neither do we consider that the clothing can qualify as newly discovered evidence within the meaning of that term in TR. 59(A)(6). Here, the clear indication is that the clothing, whether clean or dirty, would have had no impact on the result of the trial. *Ward* v. *State* (1956), 235 Ind. 531, 135 N.E.2d 509; *Keyton* v. *State* (1972), 257 Ind. 645, 278 N.E.2d 277.

Finding no error, we affirm the judgment of the trial court.

Arterburn, C.J., Givan, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 319 N.E.2d 126.