James L. PERRY, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 782S264.

Supreme Court of Indiana.

Nov. 30, 1984.

Ralph Ogden, Wilcox, Ogden & DuMond, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of Attempted Burglary, a class C felony, Ind.Code §§ 35–41–5–1 and 35–43–2–1 (Burns 1979) and was found to be an habitual offender, Ind.Code § 35–50–2–8 (Burns Supp.1984). He was sentenced to thirty-five years imprisonment.

The Defendant's direct appeal presents nine issues for our review which we have consolidated into eight (8) issues as follows:

1. Whether the charging information sufficiently charged the offense of attempted burglary;

2. Whether the trial court erred in denying Defendant's motion for discharge pursuant to Criminal Rule 4(B);

3. Whether the trial court erred in denying Defendant's request to have him examined to determine his competency to stand trial;

4. Whether the trial court erred when it held the trial in Defendant's absence;

5. Whether the trial court erred in denying Defendant's motion to dismiss the jury panel;

6. Whether the trial court erred when it admitted into evidence Defendant's statements to the police;

7. Whether the evidence is sufficient to sustain the conviction for attempted burglary;

8. Whether the habitual offender proceedings placed Defendant twice in jeopardy for the same offense.

The record disclosed that on January 15, 1981, two Anderson police officers responded to a burglar alarm call at Allen's Jewelry and Loan Company and apprehended the Defendant and an accomplice on the roof of the building. The owner of the store testified that a hole, which was discovered in the roof, had not been there earlier in the evening when he had closed the store. Police recovered a hatchet type hammer, a tire iron, and a knife from the roof near the hole. They also recovered a yellow pillow case which had been tied around the accomplice's neck.

## ISSUE I

■ Defendant's first assignment of error challenges the sufficiency of the charging information. Defendant failed to raise the issue at trial or in his motion to correct errors, but he argues that the alleged defects in the information constituted fundamental error. "To be categorized as fundamental error and thus to transcend our procedural requirements, the error must be blatant, and the potential for harm must be substantial and appear clearly and prospectively." *Nelson v. State*, (1980) 274 Ind. 218, 409 N.E.2d 637, 638. Without determining whether the error complained of was blatant, we find that the second requirement of *Nelson* has not been satisfied. The Defendant has neither attempted to show us how the preparation of his defense was impeded nor demonstrated how he was otherwise harmed. *Rufer v. State*, (1980) 274 Ind. 643, 413 N.E.2d 880, 882–883.

## ISSUE II

On September 16, 1981 and October 1, 1981, Defendant filed *pro se* motions for an early trial pursuant to Criminal Rule 4(B), which provides that a defendant shall be discharged if not brought to trial within seventy (70) days of a motion for an early trial. He filed a third motion for a speedy trial on October 7, 1981. On November 2, 1981, a trial date of January 19, 1982 was confirmed without objection. Defendant then filed a motion for discharge on November 18, 1981, which motion was denied on November 23, 1981.

■ This Court has held that when a defendant files a second or subsequent motion for a speedy trial, he is deemed to have abandoned the earlier motions. *Rutledge v. State*, (1981) Ind., 426 N.E.2d 638, 640. It is, therefore, the date of the final motion, October 7, 1981, from which the seventy-day period began to run. As a consequence, Defendant should have been brought to trial on or before December 16, 1981. However, on November 2, 1981, in the presence of Defendant and his counsel, a date for the trial beyond the seventy-day limit was set, and the Defendant did not object. Hence, the Defendant acquiesced in the January 19 trial date. *Wilburn v. State*, (1982) Ind., 442 N.E.2d 1098, 1103; *Little v. State*, (1981) Ind., 415 N.E.2d 44, 46. Moreover, when the Defendant filed his motion for discharge on November 18, 1981, such motion was premature and properly overruled inasmuch as the trial still could have been held within the seventy (70) day time limit of Criminal Rule 4(B). *Mickens v. State,* (1982) Ind., 439 N.E.2d 591, 595; *Banks v. State*, (1980) 273 Ind. 99, 100, 402 N.E.2d 1213, 1214.

In his reply brief, Defendant urges this Court to overrule *Mickens* and *Banks;* however, we are not persuaded by his argument to do so.

## ISSUE III

■ Ind.Code § 35–5–3.1–1 (Burns 1979) [repealed effective September 1, 1982; amended and recodified at Ind.Code § 35–36–3–1] provides that when the court, either from its own knowledge or upon the suggestion of any person, has reasonable grounds to believe that the defendant does not have sufficient comprehension to understand the proceedings or to make his defense it shall immediately hold a hearing to determine whether the defendant has that ability. The right to a competency hearing, however, is not absolute. *Feggins v. State*, (1980) 272 Ind. 585, 586, 400 N.E.2d 164, 166. Such a hearing is required by the statute and due process only when there is evidence before the trial court that creates a reasonable or bona fide doubt as to the defendant's competency. *Pate v. Robinson*, (1966) 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815, 822; *Cook v. State*, (1972) 258 Ind. 667, 670, 284 N.E.2d 81, 83. The presence of indicators sufficient to require the court to hold a hearing under Ind.Code § 35–5–3.1–1 must, of necessity, be determined upon the facts of each case as it arises, and the decision whether to hold a competency hearing lies in the province of the trial judge. *Malo v. State*, (1977) 266 Ind. 157, 160–161, 361 N.E.2d 1201, 1204. We will not disturb the decision of the trial court absent an abuse

of discretion. *Powell v. State*, (1982) Ind., 440 N.E.2d 1114, 1120.

In the case at bar, following *voir dire* examination of the jurors, defense counsel suggested to the court that in light of the Defendant's behavior in court he was not competent to stand trial. The Defendant had had five court-appointed public defenders from the time he was arraigned on January 16, 1981 to the date of the trial on January 19, 1982. His first public defender had advised him to accept a generous plea agreement, but he refused. Subsequently, on the advice of a second public defender, Defendant pled guilty to attempted burglary. He later withdrew that plea, and his attorney moved to withdraw. The third public defender withdrew "due to a conflict of interest." The fourth withdrew because of a "conflict of personality or approach to the case." Finally a fifth public defender, on the day of trial, requested permission to withdraw, and the Defendant asked for a new court appointed attorney. The trial court denied the requests and ordered that the trial proceed. In addition, the Defendant had sent a number of letters and requests to the court which appellate counsel characterizes as "rambling." On the day of trial, when the court refused to appoint a new attorney, Defendant stated that he did not wish to be present for the proceedings, and, except for two occasions when he was brought into the courtroom for purposes of identification, Defendant was absent from the first phase of the trial. He did, however, participate in the habitual offender portion of the trial at which he interjected and made numerous objections and, while testifying in his own behalf, interrogated his attorney.

Defendant argues that such erratic and irrational behavior was sufficient to require the trial judge to order an examination of the Defendant to determine his competency to stand trial. The State, on the other hand, argues that there were no reasonable grounds for the trial court to believe that the Defendant was incompetent and interprets Defendant's behavior as deliberate and calculated to postpone his trial.

"The test of competence to stand trial is whether defendant has 'sufficient present ability to consult his lawyer with a reasonable degree of rational understanding—and whether he has·a rational as well as a factual understanding of the proceedings against him.'" *Johnson v. State*, (1974) 262 Ind. 516, 520, 319 N.E.2d 126, 128; *Dusky v. United States*, (1960) 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825. We are not persuaded that Defendant's behavior presented sufficient indicators that he was unable to consult with his attorney with a reasonable degree of rational understanding or . that he did not have a factual understanding of the proceedings against him. The trial judge was in the best position to interpret Defendant's behavior, and we find no abuse of discretion in his decision. *See Green v. State*, (1981) Ind., 421 N.E.2d 635, 637.

### ISSUE IV

Defendant argues that he did not waive his Sixth Amendment right to be present during his trial but, rather, that he was coerced into absenting himself from the proceedings when he was forced to stand trial with an attorney he did not want to have represent him.

On the first day of the trial Defendant requested that the court appoint a new attorney and continue the cause; however, the trial court denied the request, noting that defense counsel was the fifth public defender to have been appointed and that, following numerous delays, the trial would commence with or without the cooperation of the Defendant. Defendant expressed his disagreement with the decision of the trial court and stated that he did not "care to" remain in the courtroom. Following a lengthy discussion between the trial judge and the Defendant, in which the court reiterated its plan to have the trial continue with the present public defender representing the Defendant, the Defendant said that he would remain in the courtroom. However, during *voir dire* examination of the jurors, the Defendant interrupted the proceedings and said, "Tell the jury, well, tell

the whole jury I'm not ready to go to trial and I don't want you [his attorney] on my case. Its (sic) just as simple as that.... I'm not trying to be hard, ladies and gentlemen, but I don't want him as a counsel and you got to have a counsel in order for me to go to trial." The trial court responded, "Mr. Perry, if you continue to inerrrupt (sic) I will remove you from the courtroom and it will be tried in your absence. I don't want to do that. This case is a year old we have got to get it disposed of." Defendant responded that he couldn't stay. Although the State requested that the Defendant be gagged, the trial court refused to do so. Following an argument between the trial judge and the Defendant regarding the propriety of conducting the trial in his absence, the Defendant stated that he would not stay in the courtroom. Hence, the trial court determined that the Defendant had waived his right to be present in the courtroom and ordered that he be removed. He then admonished the jury concerning the Defendant's absence. After the completion of *voir dire* examination, Defendant was once again brought into the courtroom, informed of the progress in the case, and asked if he wished to be present during the trial. Again, Defendant stated that he did not. Twice during the course of the first phase of the trial, Defendant was brought into the courtroom for purposes of identification. He was present for the habitual offender phase of the proceedings.

█ We note initially that the trial court did not abuse its discretion in denying the Defendant's request to have a sixth public defender appointed for him on the morning the trial began. *See Luck v. State,* (1984) Ind., 466 N.E.2d 450, and cases cited therein. Moreover, by his conduct and his express statements his right to remain in the courtroom during the proceedings was waived. In *Illinois v. Allen,* (1970) 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353, a similar situation arose. The appellant refused to be represented by his court-appointed counsel, interrupted the proceedings, and argued with the judge in an "abusive and disrespectful manner." The trial judge warned him that if his

outbursts continued, he would be removed from the courtroom. However, the appellant continued to proclaim that there would be no trial. The court ordered the appellant to be removed from the courtroom after telling him that he would be allowed to return if he could control his outbursts. The appellant reiterated that there was going to be no trial. Except for being brought back into the courtroom for purposes of identification, appellant was not present for the presentation of the State's case. He was present, however, for the presentation of his defense. The Supreme Court held that a defendant "can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Id.* 397 U.S. at 343, 90 S.Ct. at 1060, 25 L.Ed.2d at 359.

We find the circumstances in the case at bar to be analogous to those in *Allen* and find that the Defendant waived his right to be in court. *See also Howard v. State,* (1978) 268 Ind. 589, 592, 377 N.E.2d 628, 630 *cert. denied* 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708 ("[A]ppellant expressly stated he did not wish to remain at the trial on the habitual criminal hearing.").

## ISSUE V

█ During *voir dire* examination of the jurors, Defendant interrupted the proceedings and, in the presence of the jury panel, stated that he did not want his attorney to represent him and that he was not ready for trial. Subsequently, after the jury had been selected, but before it was sworn, Defendant moved to dismiss the jury panel based upon his claim that the jurors would be prejudiced by his statement. Defendant's argument that the trial court abused its discretion when it denied the motion is without merit. All of the jurors had said that they were not prejudiced by the comment, and we find no

abuse of the court's discretion, particularly in light of the fact that the court had admonished the panel to disregard the remarks of the Defendant.

### ISSUE VI

Defendant, on December 29, 1981, moved to suppress two incriminating statements which he had made to members of the Anderson Police Department, arguing that he did not knowingly and voluntarily waive his right to counsel and his right to remain silent. A hearing on the motion was held on January 12, 1982. The motion was denied, and the statements were introduced into evidence at trial.

When a question as to the voluntariness of a confession or incriminating statement arises,

"[i]t is the State's burden to prove, beyond a reasonable doubt, that the defendant voluntarily and intelligently waived his rights and that the defendant's confession was voluntarily given. In determining whether this burden has been met we look to the totality of the circumstances, including whether the confession was freely self determined, the product of a rational intellect and free will, without compulsion or inducement by way of violence, threats, promises or other improper influence, so as to overcome the free will of the accused. However, in reviewing the trial court's ruling upon the issue we will not weigh the evidence, but rather determine whether there was substantial probative evidence to support the finding of the trial court." (citations omitted).

*Goodman v. State*, (1983) Ind., 453 N.E.2d 984, 987.

With regard to the first statement at issue in the case at bar, an oral statement given to Police Officer Hanlon on January 15, 1981, shortly after Defendant's arrest, Defendant testified that he did not remember having talked to Detective Hanlon and that he had been drinking and was under the influence of drugs at the time of his arrest. A search of the Defendant's person had revealed a syringe with residue from an unknown substance. He further argues that he was not advised of his right to have a court appointed attorney present if he could not afford one of his own. Officer Hanlon, however, at the suppression hearing and at the trial, testified that on January 15, 1981, the Defendant was advised of his rights and responded that he was aware of his rights. When tendered a waiver of rights form the Defendant responded further that he was aware of his rights and that he "just didn't want to sign anything," but that he was willing to talk about why he was at the police station. According to Hanlon the Defendant did not appear to be under the influence of alcohol or drugs at the time the statement was given, and he was very cautious in how he answered questions. Although the evidence was conflicting, it, nevertheless, was sufficient to sustain the ruling of the trial court.

With respect to the statement on January 29, 1981 given to Police Officer Brown, the Defendant testified that he and Brown had had several conversations after the court had appointed an attorney for him, that none of the conversations occurred in the presence of his attorney or with her consent, that he told Brown that he wanted to talk to his attorney and that Brown "got on the phone and acted like he was talking to my attorney" and told him that she said it was all right for him to make a statement, that Brown threatened him with an habitual offender charge and impliedly promised that such charge would not be filed if he cooperated, and that inasmuch as his co-defendant was making a statement against him, he should make a statement against his co-defendant.

Detective Brown testified that on January 29, Defendant called him from the jail and wanted to talk with him with his girlfriend also present. Brown advised Defendant of each of his rights, and Defendant stated that he understood them. A discussion ensued in which Defendant and his girlfriend told Brown of other criminal activity. Subsequently, Defendant stated that he wanted to give a statement about

the instant offense; thus, Brown again informed Defendant of his rights, and Defendant signed the waiver of rights form. Brown took a written statement from Defendant; the statement was typed, and Defendant signed it. Brown stated that he neither promised the Defendant leniency nor threatened him with habitual offender charges. He merely told the Defendant that he could only make recommendations to the Prosecutor's office regarding the charges. Regarding the telephone calls to Defendant's attorney, Brown testified that he had made two telephone calls to her—the first on January 16, 1981 after he had told Defendant that he could have his attorney present for any statement he wished to make. She talked to Defendant and then, over the telephone, told Brown that "she didn't want her client making any statement . . . until she had had a chance to talk to him." He then asked Defendant if he understood that his attorney did not want him to talk to Officer Brown at that time, and the conversation ended. Subsequently, on February 4, 1981, after the statement at issue had been given, Defendant asked Brown to talk to him again. Defendant said that he wanted to talk to his attorney first; hence, Brown called the attorney at home, and, with Defendant on an extension phone, the three had a conversation. Defendant and his attorney then had a private conversation, and Defendant stated that he had nothing more to say at that time.

█ On the date of the statement in question, Defendant was fully informed of his rights, signed a waiver of rights form, did not request to speak to his attorney or to have her present during his statement, initiated the conversation with Detective Brown, and voluntarily and knowingly made an incriminating statement.

### ISSUE VII

█ Defendant's claim of insufficiency of the evidence is predicated upon his argument that the incriminating statements were improperly admitted into evidence. That issue having been determined contrary to his position, this assignment of error fails.

### ISSUE VIII

█ Defendant claims that the habitual offender proceeding constitutes a violation of the constitutional provisions against double jeopardy and asks us to reconsider a long line of cases, including *Harris v. State*, (1981) Ind., 427 N.E.2d 658; *Anderson v. State*, (1981) Ind., 426 N.E.2d 674; *Baker v. State*, (1981) Ind., 425 N.E.2d 98; *Smith v. State*, (1981) Ind., 422 N.E.2d 1179; *Dorton v. State*, (1981) Ind., 419 N.E.2d 1289; and *Griffin v. State*, (1981) Ind., 415 N.E.2d 60, which hold that the habitual offender statute does not violate the ban on double jeopardy. He has presented no new or persuasive argument in support of his position, and we decline to overrule our existing case law.

### SUA SPONTE ISSUE

█ The trial court sentenced Defendant to five (5) years imprisonment upon the attempted burglary conviction and to thirty (30) years imprisonment on the habitual offender finding, said sentences to be served consecutively. As we have held on several occasions, the proper sentence would be a five year sentence enhanced by thirty years upon the habitual offender finding, for a sentence of thirty-five (35) years for attempted burglary. *See Wilson v. State*, (1984) Ind., 465 N.E.2d 717, 721; *Short v. State*, (1982) Ind., 443 N.E.2d 298, 301; *Yager v. State*, (1982) Ind., 437 N.E.2d 454, 457.

The cause is remanded for correction of the sentence. In all other respects the judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.