Robert **GRIESINGER**, Appellant–Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 71A03–9710–CR–383.

Court of Appeals of Indiana.

July 28, 1998.

Transfer Denied Sept. 30, 1998.

Jeffrey L. Sanford, South Bend, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Rosemary L. Borek, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

KIRSCH, Judge.

A jury convicted Robert Griesinger of residential entry,[1] a Class D felony, and confinement,[2] a Class B felony. He appeals, presenting three issues:

I.   Whether the trial court erred by refusing Griesinger's tendered jury instruction on consent to entry.

II.  Whether the trial court erred by refusing Griesinger's tendered jury instruction on the lesser included offense of confinement as a Class D felony.

III. Whether the trial court erred by refusing Griesinger's tendered jury instruction which would have advised the jury that consent negates a confinement charge.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Griesinger was Pam Babbs' boyfriend. He lived in her house sporadically, and he had a key to some of the locks on the house. About a year and a half after their relationship began, the couple had a disagreement at Babbs' home. Griesinger left. In the middle of the night he returned and tried to get into Babbs' bedroom through the window. Babbs woke up, jumped out of bed, went to her sister's bedroom and hysterically told her that Griesinger was in the house. Babbs then rushed outside toward her car. Moments later, Griesinger came out, holding a knife. He grabbed Babbs, forced her into his car and drove away.

Several hours later, Griesinger brought Babbs back to her house. Babbs was crying and shaking, and Babbs' sister called the police. Babbs, distraught, told the police that Griesinger had threatened to cut her throat unless she cooperated with him. She also told the police that he had taken her to a western part of the county where he stopped the car, ordered her to her knees, and thrust his penis into her mouth. After that, he pushed her onto the hood of his car and raped her.

Based on Babbs' initial, distressed conversation with the police, the State charged Griesinger with rape, criminal deviate conduct, confinement, and residential entry. In Babbs' pre-trial deposition, however, she recanted her earlier allegations. In the deposition, Babbs claimed that Griesinger never threatened her with the knife, he merely held it in his hand. Further, she said that her sexual relations with Griesinger that night had been consensual. Due to Babbs' new testimony, the State dismissed the rape and criminal deviate conduct charges, and revised the confinement charge.

At trial, Babbs testified that Griesinger lived with her off and on, and that he had key to her house but not to the storm doors. On the day prior to the incident Griesinger had left Babbs' home to return to his mother's home. Babbs testified that Griesinger telephoned her a couple of times the next evening, and that she told him she didn't feel well. During the telephone calls, Griesinger never said he was coming to Babbs' house. Later that night, Babbs awoke to a scratching sound on her window screen. According to her testimony, she jumped up, went downstairs and told her sister that Griesinger was in the house. She then went outside, unlocking her front door to do so. She testified that Griesinger came outside and grabbed her by the back of her hair. She said he held a knife in his hand but never pointed it at her. She further said that when Griesinger took her to his car, he put the knife between his teeth in order to retrieve his

---

1. *See* IC 35–43–2–1.5.

2. *See* IC 35–42–3–3(2).

keys. While the knife was in his mouth, Babbs grabbed it and threw it aside.

Griesinger then testified. He said he had come to Babbs' house that night because he was concerned about her health. Throughout their relationship, Griesinger said, Babbs demanded that he check on her regularly because she had insulin-dependent diabetes. He further said that Babbs was afraid she would lapse into a diabetic coma, so she insisted that he enter the house in whatever way necessary to check on her. According to Griesinger, he entered the house through the upstairs window that night because no one answered his knocks on the door, and he felt he must comply with Babbs' entreaty that he check on her.

The jury convicted Griesinger as charged.

## DISCUSSION AND DECISION

### I. Standard of Review

■ Griesinger challenges the trial court's refusal of three instructions he tendered. When reviewing a trial court's refusal of jury instructions, this court applies a three-part test: "1) whether the instruction correctly states the law; 2) whether there was evidence in the record to support the giving of the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions which are given." *Fields v. State*, 679 N.E.2d 1315, 1322 (Ind. 1997).

### II. Residential Entry Instruction

Griesinger contends the trial court should have instructed the jury that they must find him not guilty if they found he had Babbs' consent to enter her house. Griesinger tendered the following instruction:

"The crime of residential entry requires a breaking. There can be no breaking, and therefore no residential entry, where the owner or other authorized person consents to entry, since a consensual entry is not an unlawful or illegal entry. The State must prove beyond a reasonable doubt that there was a breaking as defined by law."

*Supplemental Record* at 42. Griesinger argues that the trial court erred by refusing

the instruction, because the instruction correctly stated the law, the evidence supported the instruction, and no other instruction informed the jury of the consent issue.

The State responds that the instructions as given adequately informed the jury of the consent issue. According to the State, the following instructions advised the jury of the consent defense:

"Lack of consent is not an element of the offense of Residential Entry and the State is not required to prove lack of consent. A defendant's belief that he has permission to enter must be reasonable in order for the defendant to avail himself of the defense of consent."

*Supplemental Record* at 35.

"Where a defense which negates an element of an offense has been raised, the State has the burden of disproving that defense beyond a reasonable doubt. The State may meet this burden by providing additional evidence to rebut the defense or by relying upon the evidence of its case-in-chief."

*Supplemental Record* at 36.

To resolve the jury instruction issue, we must determine whether, as Griesinger contends, lack of consent is an element of the crime of residential entry, or whether, as the State contends, consent to entry is a defense. If consent is a defense, the trial court's instructions were correct. If, however, lack of consent is an element of the crime, the trial court's instructions improperly failed to inform the jury of the State's burden of proving lack of consent.

■ The controlling statute contains no consent element. The statute reads: "A person who knowingly or intentionally breaks and enters the dwelling of another person commits residential entry, a Class D felony." IC 35-43-2-1.5. Notwithstanding the statutory language, Griesinger contends that lack of consent is an element of the crime, because lack of consent is inherent in the term "break." In support of this contention, Griesinger cites a burglary case, *Smith v. State*, 477 N.E.2d 857 (Ind.1985). As Griesinger points out, the court stated in *Smith* that there is no "break" when the owner con-

sents to entry. *Id.* at 862. The court went on to explain, however, that consent to enter is a defense to a burglary charge. *Id.* at 863.

Similarly, in *McKinney v. State,* 653 N.E.2d 115 (Ind.Ct.App.1995), a residential entry case, the court stated that "in order to establish that a breaking has occurred, the State need only introduce evidence from which the trier of fact could reasonably infer that the slightest force was used to gain **unauthorized** entry." *Id.* at 117 (emphasis added). When read in isolation, the court's statement suggests that lack of consent is an element of the crime. The full opinion makes clear, though, that consent arises only as a defense. The court in *McKinney* pointed out that lack of consent is not an element of residential entry—rather, the court said, the defendant must prove consent as a defense. *Id.* at 118.

Further, a review of the precedent containing the words "unauthorized entry" indicates that the courts used the term "unauthorized" as a synonym for the term "illegal." Used in this manner, "unauthorized" carries no reference to authorization from the owner of the dwelling. Instead, in this context, "unauthorized" means "not authorized by the State", i.e., illegal. The reference to illegality originated in *Willard v. State,* 272 Ind. 589, 400 N.E.2d 151 (1980): " '[b]reaking and entering' in this context connotes an **illegal** entry, even if by opening an unlocked door or window." *Id.* 272 Ind. at 603, 400 N.E.2d at 160 (emphasis added). The next case adopting *Willard* substituted the word "unauthorized" for the word "illegal" without any indication that a change in meaning was intended. *See Howard v. State,* 433 N.E.2d 753, 756 (Ind. 1982). The subsequent line of cases continued using the word "unauthorized" without reference to any consent issue. *See Howard v. State,* 433 N.E.2d 753, 756 (Ind.1982), *cited in Trice v. State,* 490 N.E.2d 757, 758–59 (Ind.1986), *cited in England v. State,* 530 N.E.2d 100, 101 (Ind.1988), *cited in Bellmore v. State,* 602 N.E.2d 111, 124–25 (Ind.1992), *cited in McKinney v. State,* 653 N.E.2d 115, 117 (Ind.Ct.App.1995).

When viewed in the context of this precedent, the term "unauthorized entry" is seen to be synonymous with "illegal entry" in the case law definitions of the term "break." Use of the term "unauthorized entry" is adequate for cases in which consent is not an issue, but is confusing in cases in which the defendant raises the issue of consent. Here, rote citation of the definitional precedent would yield the incorrect result of placing the burden on the State to prove lack of consent. Accordingly, we apply the ultimate holdings in the relevant precedent, which state that consent is a defense to residential entry. *See Smith v. State,* 477 N.E.2d 857, 863 (Ind. 1985), *McKinney v. State,* 653 N.E.2d 115, 118 (Ind.Ct.App.1995).

In addition to the statutory language and the precedent discussed above, a comparison of the residential entry statute with the criminal trespass statute indicates that the legislature purposefully excluded the consent aspect when defining residential entry. As noted above, the residential entry statute contains no reference to consent. In contrast, the criminal trespass statute expressly identifies lack of consent as an element: "A person who, not having a contractual interest in the property, knowingly or intentionally enters the dwelling of another person **without the person's consent,** commits criminal trespass." IC 35–43–2–2(a)(5) (emphasis added).

Had the legislature intended to require the State to prove lack of consent in residential entry cases, the words "without the person's consent" could easily have been inserted in the definition of the crime. The absence of those words indicates that consent must be raised as a defense, and that once the defense is raised the State has the burden of disproving the defense beyond a reasonable doubt. Here, the State's jury instructions adequately conveyed these concepts to the jury, while Griesinger's tendered instruction erroneously indicated that lack of consent is an element of residential entry. The trial court did not err in refusing Griesinger's tendered instruction.

### III. Lesser Included Offense

Griesinger contends that Class D confinement (confinement without the use of a deadly weapon) is a lesser included offense of

Class B confinement (confinement while armed with a deadly weapon). He argues that when the court instructed the jury on Class B confinement, the court should also have instructed the jury on Class D confinement as a lesser included offense. Griesinger acknowledges that the fact he held a knife supported the Class B instruction. He maintains, however, that he was entitled to the Class D instruction because he did not use the knife as a weapon.

The State accepts Griesinger's contention that Class D confinement is a lesser included offense of Class B confinement. The State rejects, however, Griesinger's contention that the evidence warranted an instruction on Class D confinement. The State asserts that there was no serious evidentiary dispute as to whether Griesinger was armed with the knife or whether the knife could cause serious bodily injury. As such, the State argues that the trial court properly refused the instruction on Class D confinement.

■ Generally, when a party challenges a trial court's refusal to give an instruction on a lesser included offense, the first step in reviewing the challenge is to determine whether the lesser offense is inherently included in the greater offense. *Heavrin v. State,* 675 N.E.2d 1075, 1077–78 (Ind.1996) (citing *Wright v. State,* 658 N.E.2d 563, 567 (Ind.1995)). Here, however, the parties agree that Class D confinement is an inherently included lesser offense. Given that agreement, the only issue is whether there was sufficient evidence to give the Class D instruction. In other words, is there a serious evidentiary dispute as to whether the knife that Griesinger held could be used as a deadly weapon?

■ There is no such dispute. Although Babbs testified that Griesinger never held the knife to her, she also testified that when she had the chance, she grabbed the knife and hurled it away. *Record* at 203. Further, Babbs' sister testified that she heard Babbs screaming "Robert, no!". *Record* at 225. The sisters' testimony supports an inference that Griesinger's knife could be used as a deadly weapon. Conversely, the evidence contained only two items that could conceivably create an evidentiary dispute

about whether the knife was a deadly weapon: (1) Griesinger's statement that he used the knife to work on his car; and (2) Griesinger's statement that he kept the knife with him that night to protect himself and Babbs. This evidence is not sufficient to raise a serious evidentiary dispute about the knife, because Griesinger's use of the knife to repair his car or to defend himself does not negate his use of the knife as a deadly weapon. Accordingly, the trial court did not err in refusing the instruction on confinement as a Class D felony.

## IV. Consent to Confinement

The State charged Griesinger with confinement by removal: "ROBERT GRIESINGER did knowingly and while armed with a deadly weapon, to-wit: a knife, remove Pamela K. Babbs from one place to another, to-wit: from outside or near 1521 S. Scott Street, to a nearby parked automobile, by using force or the threat of force." *Record* at 50 (Amended Count II). Griesinger tendered an instruction on confinement that read: "The charge of confinement is not made out unless it is proven that the removal was against the will or consent of the person removed." *Supplemental Record* at 53. The trial court refused the instruction.

Griesinger contends the refusal was prejudicial error. His factual support for this contention is Babbs' testimony that she would have gone with Griesinger if he had stopped holding on to her. *Record* at 203–04. His legal support is *Johnson v. State,* 262 Ind. 516, 519, 319 N.E.2d 126, 128 (1974), which he cites for the proposition that proof of confinement requires proof that the defendant removed the victim from one place to another without the victim's consent.

■ In *Johnson,* our supreme court addressed consent as it related to kidnapping, IC 35-1-55-1 (1971). The *Johnson* court stated that "[t]he use of force is not limited to occasions when the victim physically struggles to get away ... the evidence must support the victim's avowal of non-consent." 262 Ind. at 519, 319 N.E.2d at 128; *see also Thompson v. State,* 215 Ind. 129, 19 N.E.2d 165 (1939). More recently, however, our su-

preme court clarified consent as it relates to confinement. The court explained that there are two separate confinement offenses: nonconsensual restraint and confinement by removal. *Kelly v. State*, 535 N.E.2d 140, 141 (Ind.1989). The court further explained that lack of consent is not an element of a charge of confinement by removal. The court said:

> "Under section one of the statute, the act of nonconsensual confinement is prohibited, irrespective of any intent to remove the individual to another location; thus, the elements of the first type of confinement would be:
>
> (1) knowingly or intentionally,
>
> (2) confining another person,
>
> (3) without their consent.
>
> But lack of consent is not an element of confinement under section two.
>
> Instead, it would be necessary to show the accused:
>
> (1) knowingly or intentionally,
>
> (2) removed another person from one place to another,
>
> (3) by fraud, or enticement, force or threat of force."

*Kelly v. State*, 535 N.E.2d 140, 141 (quoting *Addis v. State*, 404 N.E.2d 59, 60 (Ind.App. 1980)).

Here, the trial court correctly instructed the jury on the elements of confinement by removal. The court's instruction stated that to find Griesinger guilty, the jury must find that

> "1. The defendant, Robert Griesinger;
>
> 2. Knowingly,
>
> 3. While armed with a deadly weapon;
>
> 4. Removed Pamela Babbs, from one place to another;
>
> 5. By force or the threat of force."

*Supplemental Record* at 24. As the trial court noted, Griesinger's tendered instruction was confusing in that it referenced the concept of consent, which is not an element of confinement by removal. Accordingly, the trial court did not err in refusing Griesinger's tendered instruction.

Affirmed.

SULLIVAN and BAKER, JJ., concur.