## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 05 2017, 6:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jane H. Conley
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Angela Kinney,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 5, 2017

Court of Appeals Case No.
49A02-1704-CR-726

Appeal from the Marion Superior Court

The Honorable Christina R. Klineman, Judge

Trial Court Cause No.
49G17-1701-F6-2268

**Bradford, Judge.**

# Case Summary

[1] Appellant-Defendant Angela Kinney and Michael Kinney were married and are the parents of two children, C.K. and K.K. (collectively, "the Children"). At some point, Kinney and Michael separated, after which Michael was awarded custody of the Children. In January of 2017, Michael and the Children resided with Michael's mother, Carol Henderson.

[2] On January 16, 2017, Kinney went to Henderson's residence and, while there, engaged in a number of unlawful acts including punching and choking Henderson and choking and biting Michael. Appellee-Plaintiff the State of Indiana ("the State") subsequently charged Kinney with Level 6 felony domestic battery, two counts of Level 6 felony strangulation, Level 6 felony battery against a public safety official, and two counts of Class A misdemeanor battery resulting in bodily injury. Following a bench trial, Kinney was found guilty as charged. The trial court subsequently merged one of the Class A misdemeanor battery charges with the Level 6 felony domestic battery charge and sentenced Kinney to an aggregate term of 365 days with credit for time served and the remainder suspended to probation.

[3] On appeal, Kinney contends that the trial court abused its discretion by failing to conduct a competency hearing prior to the start of trial. Kinney also contends that the evidence is insufficient to sustain her conviction for Level 6 felony domestic battery. Concluding otherwise, we affirm.

# Facts and Procedural History

[4]    Kinney and Michael were married and are the parents of the Children. At some point, Kinney and Michael separated, after which Michael was awarded custody of the Children. In January of 2017, Michael and the Children were living with Henderson.

[5]    On January 16, 2017, Kinney went to Henderson's residence. When Kinney arrived at the residence, the Children were both in K.K.'s bedroom. After knocking on the front door, Kinney "barged in" the residence. Tr. Vol. II, p. 27. Kinney then attempted to go "back to [K.K.'s] bedroom." Tr. Vol. II, p. 27. The situation turned violent after Michael requested that Kinney leave the residence.

[6]    While standing in the living room, Kinney indicated that she "wasn't leaving without her children and she was going to take them home." Tr. Vol. II, p. 10. Henderson positioned herself between Kinney and the Children and stated "You're not taking your children home. You lost that parental rights seven (7) years ago" when Michael was awarded custody. Tr. Vol. II, p. 10. Kinney then "punched [Henderson] in the eye and ran" back toward K.K.'s bedroom.[1] Tr. Vol. II, p. 10. Kinney ran back into K.K.'s bedroom and "slammed the door." Tr. Vol. II, p. 11.

---

[1] As a result of being punched in the eye, Henderson suffered bruising and a cut that ran "from the center of the eye all the way to the side of [her] brow." Tr. Vol. II, p. 11.

[7] Michael and Henderson followed Kinney to the bedroom. Kinney resisted their attempts to enter the room. Eventually, Henderson and Michael were able to open the door. Michael pushed Kinney away from the door and stated "You don't hit my mom." Tr. Vol. II, p. 11. Henderson then indicated that she was going to call the police, after which Kinney attacked her. Kinney "grabbed [Henderson] by the throat with one (1) hand." Tr. Vol. II, p. 12. Henderson gagged and had difficulty breathing because Kinney was squeezing her neck. Henderson later indicated that "it felt like [Kinney] was trying to rip my esophagus off of me." Tr. Vol. II, p. 12.

[8] Kinney next "went after" Michael. Tr. Vol. II, p. 13. Kinney "put her hands around [Michael's] neck and started choking [him]." Tr. Vol. II, p. 30. Michael "couldn't breathe" and "felt like [Kinney] was tearing [his] skin." Tr. Vol. II, p. 30. Kinney "had a hold of [Michael's] neck while [they] were standing for at least a minute." Tr. Vol. II, p. 31. While squeezing Michael's neck, Kinney said, "Die, b[****], die." Tr. Vol. II, p. 31. Eventually, Michael was able to take Kinney to the ground. Once on the ground, Michael attempted to restrain Kinney until police arrived. While on the ground, Kinney "swung a few times" at Michael and bit his left shoulder. Tr. Vol. II, p. 31. Kinney continued to struggle until responding officers arrived.

[9] When Indianapolis Metropolitan Police Officers Jason Hitchcock and Shane Nicholsen arrived at Henderson's home, they were met by Henderson who was "seemed very upset." Tr. Vol. II, pp. 47-48. Henderson "was crying and [ ]

was screaming that she needed help and that [the officers] needed to hurry."
Tr. Vol. II, p. 48.

[10]     Upon entering the home, Officer Hitchcock observed

> Ms. Kinney on the ground, uhm, screaming and there was, uhm, blood all over her hands and then [Michael] was holding on to her, uhm, trying to, uhm, I guess like contain her and, uhm, he was saying that – he was yelling at us saying, "I need your help. You need to come help me."

Tr. Vol. II, p. 48.  Kinney was "squirming, fighting, [and] screaming."  Tr. Vol. II, p. 48.  She was "very agitated, uhm, very belligerent.  Uh, she – she was speaking in tongues, saying that, uh, she was God and that, uhm, that we were – meaning us as officers and the others in the room – we were all going to hell and, uhm, that there was nothing that we could do, uhm, to her."  Tr. Vol. II, p. 49.  Kinney was "acting belligerent, yelling a lot of things that didn't really make sense."  Tr. Vol. II, p. 49.

[11]     > [A]s Officer Nicholsen was getting information from those that were in the residence, uhm, Ms. Kinney was sitting down at the time.  She immediately stood up and started to state, uhm, yell at [Henderson] and [Michael] that she was going to kill them and was saying that she is God and that everybody was going to Hell.

Tr. Vol. II, p. 50.  Officer Hitchcock then told her "Ma'am, you need to relax and have a seat."  Tr. Vol. II, p. 50.  Kinney ignored Officer Hitchcock's commands and "continued to yell and act belligerent, uhm, screaming profanities."  Tr. Vol. II, p. 50. Officer Hitchcock "then told her, 'Ms. Kinney,

you need to sit down now.'" Tr. Vol. II, p. 50. At that point, Kinney "immediately turned to [Officer Hitchcock], yelled profanities in [his] face and then with her right leg kicked [Officer Hitchcock] in [his] right shin." Tr. Vol. II, p. 50. The kick to the shin caused Officer Hitchcock to suffer pain. After Kinney kicked him, Officer Hitchcock "performed an IMPD-taught leg sweep" and "took Ms. Kinney to the ground." Tr. Vol. II, p. 51. Kinney was then placed under arrest.

[12] The next day, the State charged Kinney with Level 6 felony domestic battery, two counts of Level 6 felony strangulation, Level 6 felony battery against a public safety official, and two counts of Class A misdemeanor battery resulting in bodily injury. The matter proceeded to a bench trial on February 28, 2017. Before the trial commenced, the State indicated that it had "concerns as to competency, uh, given some of the statements that were made at the time of the arrest." Tr. Vol. II, p. 4. The State further indicated that its concerns had been addressed with defense counsel. Defense counsel, however indicated that he did not "have any concerns about Ms. Kinney's competency." Tr. Vol. II, p. 4. Defense counsel further indicated that Kinney understood the nature of the proceedings and had been able to assist in developing a defense. The trial court stated that "given that [defense counsel] doesn't seem to share [the State's] concerns and he's the one in, uhm, contact with, uhm, Ms. Kinney, I'm, uhm, going to proceed with trial." Tr. Vol. II, pp. 5-6.

[13] Following the conclusion of trial, Kinney was found guilty as charged. The trial court subsequently merged one of the Class A misdemeanor battery

charges with the Level 6 felony domestic battery charge and sentenced Kinney to an aggregate term of 365 days with credit for time served and the remainder suspended to probation. This appeal follows.

# Discussion and Decision

## I. Competency Hearing

[14]  Kinney first contends that the trial court abused its discretion by failing to conduct a competency hearing prior to the start of trial. "The trial court must hold a competency hearing when the court has reasonable grounds to believe that defendant lacks the ability to understand the proceedings and assist in the preparation of [her] defense." *Timmons v. State*, 500 N.E.2d 1212, 1217 (Ind. 1986) (citing Ind. Code § 35-36-3-1).

> However, the right to a hearing is not absolute. *Goodman v. State* (1983), Ind., 453 N.E.2d 984, 985. A hearing is required by statute and due process only when there is evidence before the court that creates a reasonable doubt as to the defendant's competency. *Pate v. Robinson* (1966), 383 U.S. 375, 385, 86 S. Ct. 836, 842, 15 L. Ed. 2d 815; *Perry v. State* (1984), Ind., 471 N.E.2d 270, 273. Evidence sufficient to require a hearing must be determined on the facts of each case, and the decision lies within the province of the trial judge. Absent an abuse of discretion, the trial court's decision will not be disturbed. *Perry*, 471 N.E.2d at 273.

*Fine v. State*, 490 N.E.2d 305, 308 (Ind. 1986). "The tests for competence to stand trial are whether the defendant has sufficient present ability to consult with defense counsel with a reasonable degree of rational understanding and

whether defendant has a rational as well as a factual understanding of the proceedings against him." *Brown v. State*, 485 N.E.2d 108, 110 (Ind. 1985) (citing *Dusky v. U.S.*, 362 U.S. 402 (1960); *Johnson v. State*, 262 Ind. 516, 520, 319 N.E.2d 126, 128 (1974)). In determining whether a competency hearing is necessary, the trial court may "observe a defendant's demeanor, including any uncooperative behavior[.]" *Timmons*, 500 N.E.2d at 1217 (citing *Brown*, 485 N.E.2d at 110.

[15] On the morning of Kinney's trial, the State indicated that it had concerns regarding Kinney's competency in light of her behavior in the days leading up to and the time of the January 16, 2017 incident. In discussing the State's concern, the parties and the trial court engaged in the following exchange:

> [The State]:        Uh, yes, your Honor. I – the State would like to put on the record that, uhm, that we have concerns as to competency, uh, given some of the statements that were made at the time of the arrest. Uhm, it has been addressed this with Defense counsel.
> [Trial Court]:        Okay. [Defense Counsel]?
>                                    ****
> [Defense Counsel]: I – I don't have any concerns about Ms. Kinney's competency. I know my colleague, Ms. Frick, went and spoke with Ms. Kinney at the jail and there were some things said but she did understand the – my job, the prosecutor's job, your job, everything that is – she understands the nature of what's going on, I guess, and she's been able to assist me in – in developing a defense.
> [Trial Court]:        Is the only basis for your concern the events of the day in question?
> [The State]:        Uhm, our concern started two (2) weeks before. Uh, she's alleged to have, uh, told the family numerous

times that she was God and Collin Kinney was Jesus. Uhm, when the cops arrived, she's alleged to have said the cops could not do anything to her because she, uhm, will be going on an island. Uh, this gives the State–

****

[Trial Court]: Okay. Uhm, well given that [Defense Counsel] doesn't seem to share those concerns and he's the one in, uhm, contact with, uhm, Ms. Kinney, I'm, uhm, going to proceed with trial.

Tr. Vol. II, pp. 4-6.

[16] "Mental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways." *Ind. v. Edwards*, 554 U.S. 164, 175 (2008). As such, one who suffers from mental illness may be competent to stand trial at times and incompetent to stand trial at others. Again, the standard for deciding whether one is competent to stand trial is whether the defendant, *at the time of trial*, possesses the ability to consult rationally with counsel and factually comprehend the proceedings against him or her. *Brewer v. State*, 646 N.E.2d 1382, 1384 (Ind. 1995) (citing *Mato v. State*, 429 N.E.2d 945, 946 (Ind. 1982)).

[17] The trial court noted the State's concern about Kinney's prior mental state but found that, as of the morning of trial, Kinney was competent to stand trial. However, Kinney's counsel, who was in direct contact and discussions with Kinney, explicitly stated that he did not share the State's concerns. Specifically, defense counsel noted that Kinney understood the proceedings against her and was able to competently assist in her defense. Kinney, herself, seems to

acknowledge that she was competent at the time of trial, noting that she was capable of and in fact did testify "coherently" during trial. Appellant's Br. p. 8. The trial court was in the best position to judge Kinney's then-mental state as it could observe Kinney's demeanor, statements, and behavior. Given the record before us, we agree with the trial court's assessment of Kinney's mental state on the morning of trial. We therefore conclude that the trial court did not abuse its discretion by failing to conduct a competency hearing prior to the start of trial.

## II. Sufficiency of the Evidence

[18] Kinney also contends that the evidence is insufficient to sustain her conviction for Level 6 felony domestic battery.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence

presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

## A. Whether the Evidence is Sufficient to Prove Kinney Acted Knowingly

[19] "[A] person who knowingly or intentionally: (1) touches a family or household member in a rude, insolent, or angry manner; or (2) in a rude, insolent, or angry manner places any bodily fluid or waste on a family or household member; commits domestic battery, a Class A misdemeanor." Ind. Code § 35-42-2-1.3(a). However, the offense is a Level 6 felony if "[t]he person who committed the offense is at least eighteen (18) years of age and committed the offense against a family or household member in the physical presence of a child less than sixteen (16) years of age, knowing that the child was present and might be able to see or hear the offense." Ind. Code § 35-42-2-1.3(b)(2). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a).

[20] With respect to this charge, the charging information alleges that

> On or about January 17, 2017 [Kinney], being at least eighteen (18) years of age, did knowingly touch Michael Kinney, a family or household member, in a rude, insolent, or angry manner by

biting him, and [Kinney] committed said offense in the presence of [C.K.], a child less than 16 years of age; and/or [K.K.], a child less than 16 years of age; knowing that the child was present and might be able to see or hear the offense.

Appellant's App. Vol. II – Confidential, pp. 20-21. Thus, in order to prove that Kinney committed the charged Level 6 felony domestic battery, the State was required to prove that she knowingly touched Michael in a rude, insolent, or angry manner in the presence of the Children, both of whom were under the age of sixteen.

[21] The evidence most favorable to the trial court's judgment court indicates that on January 16, 2017, Kinney "barged" into Henderson's residence, where Michael and the Children were staying. Tr. Vol. II, p. 27. Kinney subsequently punched and choked Henderson. She also choked Michael. In order to stop Kinney from choking anyone in the residence, Michael pushed Kinney to the ground and restrained her until police arrived. While on the ground, Kinney "swung a few times" at Michael and bit his left shoulder. Tr. Vol. II, p. 31. Kinney continued to struggle until after she was subdued by responding officers. The Children were present in the home when Kinney attacked Michael.

[22] One may reasonably infer from the above-discussed evidence that Kinney acted knowingly when she attacked Michael. As such, we conclude that the evidence is sufficient to sustain Kinney's conviction for Level 6 felony domestic battery. Kinney's claim to the contrary amounts to nothing more than an invitation for

this court to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

## B. Whether the Evidence was Sufficient to Rebut Kinney's Claim of Self-Defense

Furthermore, to the extent that Kinney argues that the evidence is insufficient to rebut her claim of self-defense, we conclude otherwise. "The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim." *Kimbrough v. State*, 911 N.E.2d 621, 635 (Ind. Ct. App. 2009) (citing *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002)). "We neither reweigh the evidence nor judge the credibility of witnesses. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). "If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed." *Id*. "If a defendant is convicted despite his claim of self-defense, this Court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt." *Kimbrough*, 911 N.E.2d at 635 (citing *Wilson* at 800-01).

> A valid claim of self-defense is a legal justification for an otherwise criminal act. *Henson v. State*, 786 N.E.2d 274, 277 (Ind. 2003). A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. Ind. Code § 35-41-3-2. In order to prevail on such a claim, the defendant must show that [s]he: (1) was in a place where [s]he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable

fear of death or great bodily harm. *Wilson*, 770 N.E.2d at 800. An initial aggressor or a mutual combatant, whether or not the initial aggressor, must withdraw from the encounter and communicate the intent to do so to the other person, before [s]he may claim self-defense. When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Id.* The State can rebut the defendant's claim of self-defense by relying on the evidence of its case-in-chief. *Carroll v. State*, 744 N.E.2d 432, 433 (Ind. 2001).

*Id.*

[25] The evidence presented during trial demonstrates that at the time of Kinney's attack on Michael, Kinney was not in a place where she had a right to be. Both Henderson and Michael testified that Kinney "barged in" to Henderson's residence. Tr. Vol. II, pp. 9, 27. Neither Henderson nor Michael had invited Kinney into the residence. Moreover, Kinney refused to leave the residence after being instructed to do so. These facts negate Kinney's self-defense claim.[2] *See generally, Dixson v. State*, 22 N.E.3d 836, 840 (Ind. Ct. App. 2014) (providing that the fact that the defendant did not have a right to be in the cafeteria in question when the incident occurred negated defendant's self-defense claim). As was the case above, Kinney's assertion that the State failed to rebut her

---

[2] Kinney's self-defense claim is also rebutted by the evidence demonstrating that Kinney was the initial aggressor as she punched and choked Henderson before Michael used any force to attempt to restrain Kinney.

claim of self-defense amounts to nothing more than an invitation for this court to reweigh the evidence, which we will not do. *See Wallace*, 725 N.E.2d at 840.

# Conclusion

In sum, we conclude that (1) the trial court did not abuse its discretion by failing to order a competency hearing prior to the start of trial, and (2) the evidence is sufficient to sustain Kinney's conviction for Level 6 felony domestic battery.

The judgment of the trial court is affirmed.

May, J., and Barnes, J., concur.