Raymond E. MALLARD, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A05–0311–CR–580.

Court of Appeals of Indiana.

Oct. 6, 2004.

Rehearing Denied Dec. 21, 2004.

Eric E. Kinsman, Elkhart, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Raymond Mallard ("Mallard") was convicted of Class B felony criminal confinement[1] and Class D felony impersonation of a public servant[2] in Elkhart Superior Court. He appeals and argues that the evidence was insufficient to support his conviction for Class B felony criminal confinement. Concluding that the victim was confined while Mallard was armed with a deadly weapon, we affirm.

### Facts and Procedural History

On November 13, 2002, at approximately 6:45 a.m., Andrea Colalillo ("Colalillo") was driving east on the U.S. 20 bypass in Elkhart County. Colalillo observed Mallard driving a Ford Crown Victoria as he pulled up beside her in the passing lane. After driving side-by-side for a few minutes, Mallard reduced his speed and moved into Colalillo's lane directly behind her. Mallard then turned on a spotlight affixed to his car so that it was shining directly on Colalillo's car and flashed his headlights from low to high beams. Believing that Mallard was a police officer, Colalillo pulled her vehicle over to the side of the road.

Mallard pulled his vehicle over behind Colalillo's and exited his vehicle. He walked up to Colalillo's vehicle, knocked on her window and flashed a badge. Colalillo rolled down her window after Mallard demanded that she do so. Mallard, who was not in any type of uniform, asked Colalillo where she was going and why she was in such a hurry. Tr. p. 56. Mallard proceeded to request her driver's license and registration, which Colalillo gave to him. Mallard took those items and returned to his vehicle.

Shortly thereafter, Indiana State Trooper Chad Sherwood ("Sherwood") observed the two vehicles on the side of the road and stopped to provide assistance if necessary. Sherwood pulled his vehicle up be-

1. Ind.Code § 35–42–3–3 (1998 & Supp.2003).

2. Ind.Code § 35–44–2–3 (1998).

hind Mallard's and noticed that Mallard's vehicle had an Indiana DARE license plate on it, which no state police car would have. Sherwood also observed that Mallard was not in uniform and driving an unmarked car. He then asked Mallard "what do ya got?," and Mallard replied that Colalillo was driving too fast. Tr. p. 97.

Suspecting that Mallard was possibly not a law enforcement officer, Sherwood asked Mallard for his identification. Mallard flashed a badge at Sherwood and quickly returned it to his pocket. Sherwood asked Mallard if he could see the badge and upon obtaining the badge Sherwood was able to determine that it was not a police badge. Tr. pp. 98–99. Therefore, Sherwood requested Mallard's police identification, but Mallard would not directly respond to him and did not produce the requested identification. Mallard did however show Sherwood a St. Joseph County Park Ranger hat that he had in his vehicle. Sherwood made a second request for police identification and Mallard searched through his wallet but could not produce the requested identification. Sherwood asked Mallard where his weapon was and Mallard told him it was in his vehicle. Tr. p. 111. Sherwood also asked Mallard if he had any weapons on his person. Mallard patted his pocket and told Sherwood that he had a .25 caliber Beretta in his left front pants pocket. Tr. p. 114. Sherwood recovered the handgun and discovered that it was loaded with a round in the chamber.

Sherwood then spoke with Colalillo who told Sherwood that Mallard had stopped her by shining his spotlight on her vehicle and that Mallard had taken her license and registration. Mallard admitted that Colalillo's license and registration were in his vehicle and those items were returned to her. Tr. pp. 128–29. Mallard then acknowledged to Sherwood that he was doing something he was not supposed to be doing. Tr. p. 130. He was therefore arrested for impersonating a police officer. His vehicle was subsequently searched. During the search, a .40 caliber automatic Sig Sauer handgun and various items of police equipment were recovered from his vehicle.

On November 19, 2002, Mallard was charged with Class B felony criminal confinement and Class D felony impersonation of a public servant.[3] A jury trial commenced on September 2, 2003, and Mallard was found guilty as charged. The sentencing hearing was held on September 29, 2003, at which time the trial court ordered Mallard to serve concurrent terms of six years for the Class B felony criminal confinement conviction and six months for the Class D felony impersonating a public servant conviction. Mallard now appeals.

### Standard of Review

 Our standard of review for sufficiency claims is well settled. We neither reweigh the evidence nor judge the credibility of the witnesses. *Cox v. State*, 774 N.E.2d 1025, 1029 (Ind.Ct.App.2002). We only consider the evidence most favorable to the judgment and the reasonable inferences that can be drawn therefrom. *Id.* Where there is substantial evidence of probative value to support the judgment, it will not be disturbed. *Armour v. State*, 762 N.E.2d 208, 215 (Ind.Ct.App.2002), *trans. denied.*

### Discussion and Decision

 To convict Mallard of Class B felony criminal confinement, the State was required to prove that Mallard knowingly or intentionally confined Colalillo without

---

**3.** Mallard was also charged with Class D felony possession of a legend drug without a prescription, but that charge was later dismissed.

her consent while armed with a deadly weapon. *See* Ind.Code § 35–42–3–3 (1998 & Supp.2003). The term "confine" "means to substantially interfere with the liberty of a person." Ind.Code § 35–42–3–1 (1998). Mallard argues that the evidence was insufficient to support both his criminal confinement conviction and the Class B felony enhancement. Specifically, he contends that Colalillo was never confined in her vehicle and a deadly weapon was never used during the commission of the alleged crime.

Mallard argues that Colalillo was never "confined" because "the record is silent as to evidence or testimony which demonstrates a substantial interference with [Colalillo's] liberty." Br. of Appellant at 4. Mallard also contends that "the evidence presented to the jury shows that at no time did Mallard order, ask, suggest or otherwise indicate that [Colalillo] was not free to leave her vehicle." *Id.* at 4–5. Finally, Mallard asserts that Colalillo's belief that Mallard was a police officer is not enough to convict him of confinement.

Mallard concedes that the evidence was sufficient to establish that Colalillo believed that he was a police officer. Mallard intentionally impersonated a police officer and did nothing to dispel the false impression he deliberately created. Mallard reinforced that false impression by showing Colalillo a badge. Upon his request, Colalillo gave Mallard her driver's license and vehicle registration, and he took them back to his vehicle. By his

actions, Mallard caused Colalillo to pull her car over to the side of the road. Moreover, due to Colalillo's belief that Mallard was a police officer and the fact that Mallard had taken her license and registration, the jury could reasonably conclude that Colalillo did not feel free to exit her vehicle or drive away. Under these facts and circumstances, the State presented ample evidence to prove that Mallard substantially interfered with Colalillo's liberty without her consent, and therefore, that Mallard committed the offense of criminal confinement.

■ Mallard also argues that the evidence was insufficient to support the Class B felony enhancement. To convict Mallard of Class B felony criminal confinement, the State had to prove that Mallard knowingly or intentionally confined Colalillo *"while armed* with a deadly weapon." *See* Ind.Code § 35–42–3–3(b)(2)(A) (emphasis added). Mallard does not dispute that the loaded handgun in his pants pocket falls under the definition of "deadly weapon." *See* Ind.Code § 35–41–1–8 (1998 & Supp.2003). However, he argues that because he never threatened Colalillo with the handgun or used the handgun during the commission of the offense, the evidence was insufficient to support the Class B felony enhancement. Br. of Appellant at 6.[4]

There is no case in Indiana directly addressing this issue; however, our decision in *Griesinger v. State,* 699 N.E.2d 279

---

4. Mallard urges our court to apply what he terms the "usage test" to determine whether the evidence was sufficient to support the Class B felony enhancement. In support of this argument, he provides citations to cases where our courts have addressed the issue of whether certain objects such as a glass bowl, an unloaded handgun, or a disabled handgun are "deadly weapons" within the meaning of the statute. In making that determination, our courts have looked at the manner in which the object was used. Br. of Appellant at 6–7 (citing *Rogers v. State,* 537 N.E.2d 481, 485 (Ind.1989); *Grafe v. State,* 686 N.E.2d 890, 894 (Ind.Ct.App.1997), *trans. denied; Dobbs v. State,* 433 N.E.2d 848, 851 (Ind.Ct. App.1982)). However, the issue in this case is not whether Mallard's loaded handgun was a deadly weapon, but whether a confinement conviction may be enhanced where Mallard did not actually use the deadly weapon during the commission of the offense.

(Ind.Ct.App.1998), *trans. denied,* is instructive. In *Griesinger,* the defendant, who was convicted of Class B felony confinement, argued that he was entitled to a jury instruction on Class D felony confinement as a lesser included offense. *Id.* at 282–83. Specifically, he argued that he was entitled to the instruction because he did not use the knife in his possession as a weapon during the commission of the offense. *Id.* at 283. Our court noted that the victim testified that the defendant never held the knife to her,[5] but also observed that evidence presented at trial supported an inference that the knife could have been used as a deadly weapon. *Id.* Therefore, our court held that the trial court properly refused to give the Class D felony confinement instruction. *Id.* Similarly, in this case, although Mallard never threatened Colalillo or used the loaded handgun during the commission of the offense, the weapon was in his pocket at all relevant times and a jury could reasonably conclude that Mallard could have used the handgun as a deadly weapon.

More importantly, under the plain language of the statute, the State is only required to prove that the defendant committed the offense of criminal confinement "while armed with a deadly weapon." Ind. Code § 35–42–3–3(b)(2)(A). The statute does not require the State prove that a deadly weapon was used during the commission of the offense. We can reasonably infer that our General Assembly considered the heightened risk to a confined victim if the perpetrator is armed with a deadly weapon when it determined that a Class B felony enhancement was warranted in such cases. Accordingly, we conclude that the State was only required to prove that Mallard was armed with a

deadly weapon, and therefore, the evidence is sufficient to support his Class B felony confinement conviction.

Affirmed.

DARDEN, J., and FRIEDLANDER, J., concur.

---

**5.** In fact, the victim testified that while the knife was in the defendant's mouth, she grabbed it and threw it aside. *Id.* at 280–81.