## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Apr 13 2016, 6:37 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Arcine Cook,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

April 13, 2016

Court of Appeals Cause No.
49A02-1508-CR-1157

Appeal from the Marion Superior Court

The Honorable Mark D. Stoner, Judge
The Honorable Jeffrey Marchal, Magistrate

Trial Court Cause No.
49G06-1502-F3-4922

**Barnes, Judge.**

## Case Summary

Arcine Cook appeals his conviction for Level 3 felony criminal confinement with a deadly weapon. We affirm.

## Issue

The sole issue before us is whether there is sufficient evidence that Cook committed confinement while armed with a deadly weapon.

## Facts

Cook was involved in a romantic relationship with Marshelle Lowe in early 2015. On the night of February 6, 2015, Lowe picked Cook up from his job. Lowe drove Cook to an ATM, where he withdrew cash, then the two went to a liquor store before going to Lowe's home in Indianapolis. Cook gave Lowe $140 from the ATM as gas money for her driving him to and from work. After arriving at Lowe's home, Cook began drinking heavily; Lowe does not drink. Sometime in the early morning hours of February 7, 2015, Cook became belligerent, as he had in the past when drinking. Lowe then told Cook that she sometimes audio recorded him on her cell phone when he got drunk and belligerent and she played a prior recording for him.

After hearing this recording, Cook became angrier and began acting as if he was going to leave, although he was dependent upon Lowe to drive him places. Lowe then activated audio recording on her cell phone again as she got dressed and prepared to drive Cook to his residence. After Lowe got her purse and was about to go out to her car, Cook grabbed her purse and said, "Well, where my

bread at?  Give me my bread."  Tr. p. 29.  Cook and Lowe then began struggling over the purse until Cook, who is considerably larger than Lowe, pinned her on the floor on her back while he sat on her stomach.  Cook rifled through Lowe's purse.  At first Lowe believed Cook was looking for the money he had given her earlier in the evening, but when Lowe told Cook the money was in her wallet he said, "F*** the money."  *Id.* at 32.  Cook then dug deeper into Lowe's purse and found her licensed handgun, which he knew from previous experience Lowe carried in her purse.[1]  Cook cocked the gun and pointed it at Lowe's chest, then noticed it was unloaded and asked her, "Where the shells at?"  *Id.*  Lowe falsely told Cook they were upstairs under her bed.  Cook accused her of lying, put the gun in his back pocket, and continued looking through her purse for a magazine clip while he remained on top of her.

[5]  Finally, Cook dumped out the contents of Lowe's purse, and a magazine clip fell onto the floor.  Lowe managed to grab the clip before Cook did.  Cook and Lowe struggled over possession of the clip, each biting the other, until Lowe told Cook that she might be pregnant.  At that point, Cook got up off of Lowe.  Lowe still had the clip, but Cook pointed the gun at Lowe's back while he held her arms and forced her into a bathroom.  Lowe was still holding the clip, but Cook but did not seem to notice this.  Cook yelled at Lowe in the bathroom for three to five minutes, at one point cocking the gun before realizing again that it was unloaded.  Then, Cook opened the door to the bathroom and told Lowe to

---

[1] Cook had seen Lowe remove her gun from her purse on at least one prior occasion.

go get the clip. Lowe threw the clip on the floor without Cook noticing, then managed to flee from the home and asked a neighbor to call 911. Cook still had Lowe's gun when she fled. An officer responding to the 911 call found the gun under Lowe's couch, where Cook had told him he put it after claiming to have seized it from Lowe when she had pointed it at him.

[6] The State charged Cook with Level 3 felony confinement, Level 3 felony strangulation, and Class A misdemeanor battery, and also alleged that he was an habitual offender. After a bench trial, Cook was found guilty of all three counts; Cook then pled guilty to the habitual offender allegation. The trial court entered a judgment of conviction only for Level 3 felony confinement and sentenced Cook accordingly. Cook now appeals.

## Analysis

[7] Cook's sole claim is that there is insufficient evidence he possessed a firearm while he confined Lowe.[2] When reviewing a claim of insufficient evidence to support a conviction, we neither reweigh the evidence nor assess the credibility of witnesses. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We consider only the evidence and reasonable inferences drawn therefrom that support the conviction and will affirm if there is probative evidence from which a

---

[2] On appeal, Cook does not deny that he confined Lowe by sitting on top of her; he does contend he was not adequately charged with any confinement related to forcing Lowe into the bathroom.

reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt. *Id.*

[8] A person who knowingly or intentionally confines another person without the other person's consent commits Level 6 criminal confinement. Ind. Code § 35-42-3-3(a). The offense is elevated to a Level 3 felony if it is committed while the defendant is "armed with a deadly weapon." I.C. § 35-42-3-3(b)(2). By statutory definition, a firearm is considered a "deadly weapon" regardless of whether it is loaded. I.C. § 35-31.5-2-86(a)(1). There is no requirement that a firearm actually be used during a confinement in order to enhance the offense for being committed while armed with a deadly weapon. *Mallard v. State*, 816 N.E.2d 53, 57 (Ind. Ct. App. 2004), *trans. denied*. The purpose of enhancing punishment for committing a crime while armed with a deadly weapon is that it creates an actual heightened risk of harm to the victim of the offense. *Gray v. State*, 903 N.E.2d 940, 944 (Ind. 2009).

[9] Cook contends he was not "armed" with a deadly weapon because he never fully gained possession of Lowe's handgun and merely retrieved it from her purse to prevent her from using it against him. This argument is an invitation to reweigh the evidence and assess witness credibility, which we cannot do. As revealed by Lowe's testimony and by the cell phone audio recording of the incident, the total initial period of Cook's confinement of Lowe, before he let her up and forced her into the bathroom, lasted approximately ten minutes. At some point, no later than three to four minutes into the confinement, Cook obtained Lowe's gun; Lowe can be heard on the recording asking Cook why he

had her gun, and he responded that it was because she was pushing him. Lowe asked Cook to put her gun down, and he did not. A few minutes later, while Cook was still on top of Lowe, Lowe asked Cook why he wanted her magazine clip and if he was going to kill her. Cook retained possession of the gun and pointed it at her while he forced her into the bathroom and while they were in the bathroom.[3]

[10] Lowe's testimony and the recording also indicate that Cook specifically wanted to locate both the firearm and the ammunition for it. If Cook had merely wanted to disarm Lowe, he did so by retrieving the gun from her; there was no need to also retrieve the bullets, and certainly no need to cock the gun and point it at her. We need not credit Cook's self-serving statements that he merely took the gun from Lowe for self-defense reasons. Furthermore, Cook's claim that he only was looking for the $140 he had given Lowe earlier when he was rifling through her purse is contradicted by the recording and Lowe's testimony. Specifically, Cook expressed disinterest in finding the money when Lowe told him it was in her wallet and instead continued looking through her purse until

---

[3] As noted, Cook argues in part that the State could not rely upon Cook's forcing Lowe into the bathroom as part of the confinement because it did not specifically allege in the charging information that Cook removed Lowe from one place to another. It is true that prior cases have held that the State must specify in a charging information whether it is alleging that a defendant non-consensually confined a victim, or whether the defendant forcibly removed a victim from one place to another. *See Kelly v. State*, 535 N.E.2d 140, 142-43 (Ind. 1989). The current version of the confinement statute, under which Cook was charged and convicted, does not differentiate between non-consensual confinement and confinement by removal, as it had in the past. Instead, confinement by removal is now located solely in the kidnapping statute, Indiana Code Section 35-42-3-2. In any event, Cook confined Lowe both by sitting on top of her for approximately ten minutes and by confining her in the bathroom for another three to five minutes, completely apart from removing her from one room to another.

he found the gun and then the magazine clip, indicating those items were the objects of his search all along. Additionally, it is clear that Cook intimidated Lowe by obtaining her gun and pointing it at her, resulting in an actual heightened risk of harm to her. There is sufficient evidence that at least part of Cook's continuing confinement of Lowe was accomplished while he was armed with a deadly weapon. *Cf. Jackson v. State*, 657 N.E.2d 131, 134 (Ind. Ct. App. 1995) (holding there was sufficient evidence defendant committed robbery while armed with deadly weapon, even though victim managed to obtain knife from defendant before defendant actually took victim's purse and fled), *overruled on other grounds by Winegeart v. State*, 665 N.E.2d 893 (Ind. 1996).

[11] Cook also suggests that if the State believed he took Lowe's gun from her, he should have been charged with robbery, and that he could not have been "armed" with the gun without first committing robbery by taking the gun from Lowe. Cook seems to take this as some indication that he did not, in fact, ever have possession of the gun. However, it is possible that the acts of a defendant may fall under two overlapping statutes, and prosecutors have discretion in deciding whether to prosecute and precisely which charges to file against a defendant. *Kibbey v. State*, 733 N.E.2d 991, 996 (Ind. Ct. App. 2000). That the prosecutor here decided not to pursue robbery charges against Cook has no bearing on whether there was sufficient evidence to convict him of confinement while armed with a deadly weapon.

# Conclusion

[12] There is sufficient evidence that Cook committed the crime of Level 3 felony criminal confinement while armed with a deadly weapon. We affirm.

[13] Affirmed.

Robb, J., and Altice, J., concur.