## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 22 2016, 6:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth A. Johnson
Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Russell Rouzier,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 22, 2016

Court of Appeals Case No.
49A04-1603-CR-495

Appeal from the Marion Superior Court.
The Honorable Anne M. Flannelly, Magistrate.
Cause No. 49G04-1510-F3-035851

**Friedlander, Senior Judge**

[1]     Russell Rouzier was convicted of and sentenced for one count of criminal confinement while armed with a deadly weapon,[1] as a Level 3 felony, and one

---

[1] Ind. Code § 35-42-3-3 (b)(2)(A) (2013).

count of domestic battery,[2] as a Class A misdemeanor.  On appeal, Rouzier challenges the sufficiency of the evidence supporting his conviction of criminal confinement and the appropriateness of his sentence.  We affirm.

[2]     Rouzier and Rachel Hastings were in a romantic relationship and living together in a one-bedroom apartment on the south side of Indianapolis in October 2015.  They had been involved in the relationship for approximately one year and things were going poorly for the two.  According to Hastings, they argued about almost everything, including Rouzier's habit of staying out all night, and that Hastings was the only one of the two who was employed.  By October 7, 2015, Hastings had decided to end the relationship and find an apartment of her own when her lease expired in early November.

[3]     On Wednesday, October 7, 2015, Hastings was not scheduled to work and spent the day with Rouzier.  The two drank alcohol and used cocaine throughout the day.  Later in the evening, they were at home, eating pizza and watching television.  At some point that night, Rouzier fell asleep in a loveseat in the living room, and Hastings feel asleep on a nearby couch.

[4]     When they awoke the next morning, Hastings and Rouzier began to argue. Hastings moved into the kitchen while Rouzier remained on the loveseat. Hastings became upset and threw a can in Rouzier's direction, but it did not hit

---

[2] Ind. Code § 35-42-2-1.3 (2014).

him. Rouzier got up from the loveseat, entered the kitchen and stood face-to-face with Hastings.

[5] Hastings asked Rouzier to leave the apartment and tried to leave the kitchen area through the only exit. Each time she did so, however, Rouzier would block her with his body, or grab her arm and pull her back into the kitchen area. He did this about two or three times. Hastings was not able to get around Rouzier to leave the kitchen.

[6] Next, Rouzier wrapped his hands around Hastings's neck. Hastings could not recall whether Rouzier used one or both hands initially. Either during this part of the confrontation or shortly after, Rouzier reached for a serrated bread knife and held it to Hastings's neck without touching her for up to thirty seconds. After he stopped holding the knife to Hastings's neck, he walked to the living room and put the knife to her eighteen-year-old Italian Greyhound's neck. Hastings remembered Rouzier saying to her, "I don't have to hurt you. . . I can kill your f-ing dog." Tr. p. 43.

[7] Hastings dialed 911 from her cell phone and was only able to provide her name and address before Rouzier grabbed the phone from her and disconnected the call. Rouzier placed Hastings's phone on the loveseat near where he was standing. Hastings grabbed the phone and was able to speak with the 911 dispatcher while Rouzier remained in the room. He no longer held the knife at that time.

[8] Indianapolis Metropolitan Police Department Officer Charles Smith was the first officer to respond to the call and arrive at the apartment, which was on the second floor of its building. When Officer Smith entered the building and walked up the stairs, he found Rouzier standing outside the apartment. Officer Smith entered the apartment while Rouzier stood behind him in the doorway. Rouzier and Hastings continued to yell at each other, with Hastings requesting that Rouzier leave the apartment. By that time, Officer Gerald Neumann had arrived on the scene. Rouzier decided to leave the apartment after both officers advised him that it would be a good idea to do so. The officers and Rouzier walked down the stairs, and Rouzier walked away from the apartment building.

[9] After Officer Smith left the scene, Officer Neumann spoke with Hastings to get a more detailed account of what had occurred. Approximately ten minutes after Rouzier had walked away from the apartment, Hastings and Officer Neumann could hear Rouzier yelling through the open sliding-glass door that led to the apartment's balcony. Rouzier was asking Hastings to give him a book that contained some phone numbers. Based on his conversation with Hastings, Officer Neumann decided to place Rouzier under arrest.

[10] On October 9, 2015, the State charged Rouzier with seven criminal offenses based on the altercation, and Rouzier was served with a no-contact order protecting Hastings on October 13, 2015. While in custody at the jail pending trial, a log of phone calls kept by the jail reflected that Rouzier attempted to call Hastings thirty-six times after he was served with the no-contact order. When Rouzier was able to speak with Hastings, he begged her to violate her subpoena

and not testify at his trial. Other people called or texted her on Rouzier's behalf, asking her not to testify at Rouzier's trial. Hastings did testify against Rouzier at trial.

[11] A jury found Rouzier guilty of criminal confinement while armed with a deadly weapon, domestic battery, and battery resulting in bodily injury. The trial court sentenced Rouzier to twelve years executed for the confinement conviction, and one year executed for the domestic battery conviction to be served concurrently. The trial court found that the remaining battery conviction merged with the domestic battery conviction, and did not enter judgment of conviction or sentence on the verdict. This appeal followed.

[12] Rouzier challenges the sufficiency of the evidence supporting his conviction of criminal confinement while armed with a deadly weapon. More specifically, Rouzier argues that there is no evidence to establish that he possessed the knife while confining Hastings.

[13] When we review a challenge of the sufficiency of the evidence we neither reweigh the evidence nor judge the credibility of the witnesses. *Mallard v. State*, 816 N.E.2d 53 (Ind. Ct. App. 2004), *trans. denied*. We consider only the evidence most favorable to the judgment and the reasonable inferences that can be drawn therefrom. *Id.* We will not disturb the judgment if there is substantial evidence of probative value to support the judgment. *Id.*

[14] Here the evidence reflects that Rouzier refused to allow Hastings to leave the kitchen area after he confronted her face-to-face, blocking her exit with his body

and by pulling her by the arm back into the kitchen. He then placed both hands around her neck. During this time or just shortly after placing both hands around her neck, he picked up a serrated bread knife and held it to Hastings's neck for approximately thirty seconds. Hastings testified that Rouzier then walked to the living room area with the knife and put it to her dog's neck.

[15] We have held that the statute defining the offense of criminal confinement while armed with a deadly weapon does not require the State to prove that the deadly weapon was used during the commission of the offense, just that the defendant was armed with the deadly weapon during the commission of the offense. *Id.* This distinction was reinforced in *Nicoson v. State*, 938 N.E.2d 660 (Ind. 2010), wherein our Supreme Court concluded that a five-year sentence enhancement based upon the use of a deadly weapon, did not violate double jeopardy principles with respect to that defendant's conviction of criminal confinement while armed with a deadly weapon.

[16] Looking at the evidence presented at trial, the State proved that Rouzier was armed with the deadly weapon while confining Hastings in the kitchen. The fact that Rouzier first confined her by using his body to block her path, and by pulling her by the arm, and then by placing his hands or hand around her throat, does not diminish the sufficiency of the State's evidence supporting the conviction. Hastings was only able to leave the kitchen area after Rouzier stopped holding the knife to her throat and left the kitchen for the living room area. The evidence is sufficient to support Rouzier's conviction.

[17] Next, Rouzier claims that his sentence is inappropriate in light of the nature of the offense and character of the offender. A person, such as Rouzier, who commits a Level 3 felony shall be imprisoned for a fixed term of between three years and sixteen years with the advisory sentence being nine years. Ind. Code § 35-50-2-5 (2014). Rouzier was also convicted and sentenced for a Class A misdemeanor. A person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one year. Ind. Code § 35-50-3-2 (1977). Rouzier received a twelve-year sentence for the Level 3 felony and a one-year sentence, to be served concurrently, for the Class A misdemeanor.

[18] Under Indiana Appellate Rule 7(B), this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When conducting our review of the sentence, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*. 895 N.E.2d 1219, 1224 (Ind. 2008). A defendant bears the burden of persuading us that his sentence in inappropriate. *Childress v. State*, 848 N.E.2d 1073 (Ind. 2006).

[19] Regarding the nature of the offense, we observe that Rouzier left the living room area to confront Hastings in the kitchen. He prevented her from leaving the kitchen by first blocking her with his body, pulling her by the arm, placing his hands around her throat, and then putting a serrated knife to her neck. He then took the knife to the living room where he threatened to kill Hastings's

eighteen-year-old dog while holding the knife to its neck. After ignoring her request that he leave the premises, he also attempted to prevent her from summoning help from the police by disconnecting her first call to 911. Even after police officers had separated Rouzier and Hastings, he returned to the area of the apartment and shouted at Hastings while an officer was present to gather more information. At every opportunity to de-escalate the situation, Rouzier persisted.

[20]  As for the character of the offender, we look first to his criminal history. Rouzier's criminal history began at the age of eighteen in Florida where he was convicted of carrying a concealed weapon as a felony in September 1987. Part of his sentence for that conviction included placement on probation, which was later revoked. In 1992, Rouzier was twice convicted of carrying a concealed weapon, each as a felony, and one felony conviction for possession of marijuana with intent to deliver. That same year he was convicted for misdemeanor possession of marijuana, misdemeanor resisting law enforcement, and misdemeanor improper exhibition of a firearm. As part of his sentence for one of these convictions, Rouzier was placed on probation, which was later revoked.

[21]  In 1995, Rouzier was convicted of four felonies and three misdemeanors. His felony convictions were for possession of cocaine, dealing in cocaine, possession of cocaine with intent to deliver, and smuggling contraband. His misdemeanor convictions involved two convictions for possession of cannabis and one for resisting law enforcement.

Rouzier then moved from Florida to North Carolina. In 1998, he was convicted of two felony counts of trafficking in a schedule II controlled substance and one felony count of possession with intent to sell a schedule II controlled substance. Rouzier was in custody for those charges until February 21, 2010, during which time he received twelve separate misconduct reports.

Additionally, as a result of the nature of the charges filed against Rouzier in this case, a no-contact order was issued for the protection of Hastings. According to a log of phone calls kept by the jail, Rouzier attempted to call Hastings thirty-six times after he was served with the order. Other persons also called or texted Hastings on Rouzier's behalf. These actions further demonstrate Rouzier's disregard for the law.

In light of the nature of the offenses and the character of the offender, we conclude that Rouzier has not met his burden of persuading us that his sentence is inappropriate.

Judgment affirmed.

Baker, J., and Najam, J., concur.