


## IN THE
# Court of Appeals of Indiana

Tyrone D. Bradshaw,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

July 17, 2024

Court of Appeals Case No.
23A-CR-2700

Appeal from the Marion Superior Court

The Honorable Mark D. Stoner, Judge
The Honorable Andrew J. Borland, Magistrate

Trial Court Cause No.
49D32-2110-F5-30451

---

**Opinion by Judge Mathias**

Judge Riley concurs.
Judge Felix dissents with separate opinion.

**Mathias, Judge.**

[1] Tyrone D. Bradshaw appeals his convictions for Level 3 felony criminal confinement and Level 6 felony pointing a firearm. Bradshaw raises a single issue for our review, namely, whether his two convictions are contrary to Indiana's protections against substantive double jeopardy. Following our Supreme Court's recent opinion in *A.W. v. State*, 229 N.E.3d 1060 (Ind. 2024), we reverse Bradshaw's conviction for Level 6 felony pointing a firearm and remand with instructions for the trial court to vacate that conviction and its corresponding sentence.

## Facts and Procedural History

[2] On September 25, 2021, Bradshaw lived with Angila Chavez, with whom he had had an on-and-off relationship. That evening, Chavez went out to a bar with some neighbors. As she left, Bradshaw told her, "if I call, you best answer your phone." Tr. Vol. 2, p. 62.

[3] Around 3:00 a.m. the next morning, Chavez missed a call from Bradshaw. When she called him back, he told her to "bring your a** home now." *Id.* at 63. Chavez left her friends and returned to her residence.

[4]    As she entered through the door, Bradshaw "jumped up" from a recliner near the entrance and "frisked" her, apparently "looking for a man's phone number." *Id.* at 63-64. After he failed to find a number on her, he went through her purse, and then he went through her phone. On her phone, he found old messages between Chavez and a man from a time period when Chavez and Bradshaw were not together. Bradshaw "started shaking the phone in front of [Chavez's] face," asking, "who's this?" *Id.* at 66. The next thing Chavez knew, she was on the ground, and Bradshaw was strangling her.

[5]    As Chavez was starting to black out, Bradshaw stopped strangling her, but as she started to get up, he knocked her back down and began to strangle her again. While she was down, he bit her face. He then "put a knife to [her] throat" and threatened to kill her. *Id.* at 68. He got off of her again, sat back down, and pulled out a 9mm handgun. Chavez asked to go to the bathroom, and Bradshaw told her that, if she went anywhere near her gun in her bedroom, he would shoot her. Chavez then said that she needed medication from her bedroom, but she would not touch her gun. Bradshaw followed her, "cocked his gun[,] and pointed it directly at" Chavez. *Id.* at 70.

[6]    Chavez got her medication and returned to the living room. There, Bradshaw sat near her and kept switching between pointing the knife and pointing the firearm at her. Bradshaw told Chavez that she was "not allow[ed] . . . to leave." *Id.* at 71. The two remained in their "standoff" until it turned light outside. *Id.* at 72. At that time, Bradshaw "got up and left." *Id.*

[7] The State charged Bradshaw with seven offenses, including Level 3 felony criminal confinement and Level 6 felony pointing a firearm. The State's charging information for those two offenses stated:

> On or about September 26, 2021, [Bradshaw] did knowingly or intentionally point a firearm, to-wit: a silver .380 caliber pistol,[1] at [Chavez].
>
> * * *
>
> On or about September 26, 2021, [Bradshaw] did knowingly confine [Chavez] without the consent of [Chavez], said [Bradshaw] being armed with a deadly weapon, to wit: a handgun[.]

Appellant's App. Vol. 2, p. 75.

[8] Chavez testified at Bradshaw's ensuing bench trial. Thereafter, in its closing statement, the State discussed the evidence between those two charges as follows:

> Regarding [Level 6 felony pointing a firearm], at this point, the evidence is getting fairly repetitive. But the Court heard [Chavez] testify about the fact that the defendant had a 9mm gun, that he pointed the gun at her, and that he waved the gun around and

---

[1] There was no evidence at Bradshaw's trial of any firearm other than the 9mm handgun, and Bradshaw does not suggest on appeal that the identification of a ".380 caliber pistol" in the charging information resulted in any reversible error. *See* Appellant's App. Vol. 2, p. 75; *see also O'Connor v. State*, 234 N.E.3d 242, 246 n.2 (Ind. Ct. App. 2024) (citing *Young v. State*, 30 N.E.3d 719, 724-28 (Ind. 2015)).

used it to threaten her. So for purposes of [this offense], that evidence is fairly straightforward . . . .

\* \* \*

Regarding [Level 3 felony criminal confinement], and this is kind of, once again, a bit repetitive because we have a bit of overlap in terms of what happened here. But . . . they're sitting on the couch. After this event happens, the defendant's sitting in the chair, she's sitting on the couch, and the defendant is basically telling her that no one can leave. And he's switching between the knife and the gun and standing there or sitting there telling her that she better not tell the police.

Throughout the incident, she also indicated that he was following her around the house with the gun, and she did not feel free to leave during this entire event. . . .

Tr. Vol. 2, pp. 96-97.

[9] The trial court found Bradshaw guilty of Level 3 felony criminal confinement and Level 6 felony pointing a firearm. The court then entered its judgment of conviction and sentenced Bradshaw accordingly.

[10] This appeal ensued.

## Discussion and Decision

[11] On appeal, Bradshaw contends that his convictions for both Level 3 felony criminal confinement and Level 6 felony pointing a firearm are contrary to Indiana's protections against double jeopardy. We review such questions de novo. *A.W. v. State*, 229 N.E.3d 1060, 1064 (Ind. 2024).

[12] Indiana's protection against substantive double jeopardy prohibits "multiple convictions for the same offense in a single proceeding." *Id.* at 1066. To determine if a substantive double jeopardy violation has occurred, we apply a "three-part test based on statutory sources . . . ." *Id.* The first step is to look to the statutory language of the offenses at issue; if that language "clearly permits multiple punishments," then "there is no violation of substantive double jeopardy." *Id.* (quotation marks omitted). Here, Bradshaw and the State agree that the first step is not dispositive, and so we proceed to the second step.

[13] Under the second step, as clarified by our Supreme Court in *A.W.*, we look to the face of the charging information to discern if the factual bases identified for the charges implicate our statutory definitions of an "included offense." *Id.* In particular, the Indiana Code defines an included offense as an offense that:

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
>
> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Ind. Code § 35-31.5-2-168 (2021). As our Supreme Court further clarified, an offense is an included offense under that statute where the charging information

states that the "means used" to commit the alleged greater offense "include all of the elements of the alleged lesser included offense." *A.W.*, 229 N.E.3d at 1067 (quotation marks omitted); *see also Demby v. State*, 203 N.E.3d 1035, 1045 (Ind. Ct. App. 2021) (finding that all of the material elements of aggravated battery were necessarily found to demonstrate the means used to commit attempted murder), *trans. denied*.[2]

[14] Here, the face of the charging information simply tracks the statutory language for both offenses, aside from inserting Bradshaw's and Chavez's names into their respective locations and aside from identifying a .380-caliber handgun as the firearm used in one offense and a "handgun" as the firearm used in the other offense. Appellant's App. Vol. 2, p. 75; *see also* I.C. §§ 35-42-3-3(b)(3)(A), 35-47-4-3(b) (2021). Those facts alone do not demonstrate that the two offenses were separate offenses, as the means used to commit the greater offense could have included all of the elements of the alleged lesser offense based on the face of the information. *See A.W.*, 229 N.E.3d at 1067. Thus, the charging information here is ambiguous as to whether the pointing-a-firearm conviction may have been included in the criminal-confinement conviction. *See O'Connor v. State*, 234 N.E.3d at 246. In such circumstances, our Supreme Court made clear

---

[2] We recognize that our Supreme Court has previously held that, where the "same evidence used by the jury to establish pointing a firearm was also included among the evidence establishing the . . . elements of the criminal confinement," convictions for both offenses could not stand. *Burnett v. State*, 736 N.E.2d 259, 263 (Ind. 2000), *overruled in part on other grounds*, *Ludy v. State*, 784 N.E.2d 459, 463 n.2 (Ind. 2003). However, as *Burnett* turned on the "reasonable possibility" test under the now-overruled analysis of *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999), rather than on legislative intent, we do not consider *Burnett* binding here.

in *A.W.* that we "must construe those ambiguities in the defendant's favor, and thus find a presumptive double jeopardy violation" at this step in the analysis. 229 N.E.3d at 1069. We therefore proceed to step three of our double-jeopardy analysis.

[15] Under step three, the State may rebut the presumptive double jeopardy violation by using the facts presented at trial to demonstrate a "distinction between what would otherwise be two of the 'same' offenses." *A.W.*, 229 N.E.3d at 1071. However, "if the facts show only a single continuous crime, and one statutory offense is included in the other," the State may not obtain cumulative convictions. *Id.* (quotation marks omitted).

[16] Here, the State cannot demonstrate a distinction between the criminal-confinement allegation and the pointing-a-firearm allegation based on the facts from trial. To the contrary, the prosecutor repeatedly recognized in his closing statement that the evidence between the two offenses was "repetitive" and in "overlap." Tr. Vol. 2, pp. 96-97. As the prosecutor explained to the jury, in the early morning hours of September 26, 2021, Bradshaw repeatedly pointed his firearm at Chavez, and his pointing of that firearm at her at those times was within the means used by him to confine her.

[17] Our Supreme Court made clear in *A.W.* that it is the State's burden to expressly delineate the facts at trial in a manner that will rebut a presumptive double jeopardy violation that the State itself has created by the opaque manner in which it has chosen to write the charging information. Instead of delineating

the facts here, however, the State conflated them. And, contrary to the dissent's analysis, we do not think *A.W.* directs us to consider an alternative use of the facts that the State did not advocate for at trial in order to rebut the presumptive double jeopardy violation for the State. Accordingly, the State failed to rebut the presumptive double jeopardy violation under step three of our substantive double jeopardy analysis.

[18] Where a defendant is found guilty of both the greater offense and an included offense, the proper procedure is to vacate the conviction for the included offense and to enter a judgment of conviction and sentence only upon the greater offense. *See, e.g.*, *Demby*, 203 N.E.3d at 1046. We therefore reverse Bradshaw's conviction for Level 6 felony pointing a firearm and remand to the trial court for it to vacate that conviction and sentence accordingly.

[19] Reversed and remanded with instructions.

Riley, J., concurs.
Felix, J., dissents with separate opinion.

ATTORNEYS FOR APPELLANT

Gustav S. Gygi
Matthew D. Anglemeyer
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Robert M. Yoke
Deputy Attorney General
Indianapolis, Indiana

**Felix, Judge, dissenting.**

[20] Regarding the majority's review of whether the charges are factually included, I write separately to further explain why, based upon *A.W.,* we must conclude that the offenses are included "as charged." Next, regarding the majority's conclusion that there is a substantive double jeopardy violation, I respectfully dissent. In light of our Supreme Court's decision in *A.W.*, I believe that step three of the *Wadle* analysis shows that Bradshaw's convictions do not violate protections against double jeopardy. *See Wadle v. State*, 151 N.E.3d 227, 249 (Ind. 2020). I believe the facts presented at trial demonstrate Bradshaw committed two distinct offenses. Accordingly, I would affirm the trial court's decision.

[21] At step two of *Wadle*, we "apply our included-offense statutes to determine statutory intent." *A.W. v. State*, 229 N.E.3d 1060, 1066 (Ind. 2024) (quoting *Wadle*, 151 N.E.3d at 248). Looking to Indiana Code section 35-31.5-2-168, an "included offense" is an offense that

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
>
> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or

public interest, or a lesser kind of culpability, is required to establish its commission.

[22] "[C]ourts must confine their Step 2 analysis to (1) the included-offense statute (whether the offenses are 'inherently' included), and (2) the face of the charging instrument (whether the offenses 'as charged' are factually included)." *A.W.*, 229 N.E.3d at 1068. When "'neither offense is an included offense of the other (either inherently or as charged) there is no violation of double jeopardy and the analysis ends'—full stop." *Id.* at 1067 (quoting *Wadle,* 151 N.E.3d at 248). Unfortunately, there is confusion between the two terms "inherently included" and "factually included." Because of the confusion, I review them separately. First, I review this statute with the charging information in this case, and I conclude that the pointing-a-firearm charge has elements that do not need to be proven in the confinement-while-armed charge and vice versa. Therefore, the pointing-a-firearm offense is not inherently included in the confinement-while-armed offense. *See* Ind. Code § 35-31.5-2-168. So, I must then determine if the pointing-a-firearm charge is included factually (or "as charged") in the confinement-while-armed charge. *See A.W.*, 229 N.E.3d at 1067.

[23] As instructed by the majority in *A.W.*: "[W]hen assessing whether an offense is factually included, a court may examine only the **facts as presented on the face of the charging instrument**. This includes examining the 'means used to commit the crime charged,' which must 'include all of the elements of the alleged lesser included offense.'" 229 N.E.3d at 1067 (emphasis in original). The majority in *A.W.* then reiterated, "The factually included inquiry at this

step is thus limited to facts on the face of the charging instrument." *Id.* To do this, we review the two charging informations:

**COUNT IV**

On or about September 26, 2021, TYRONE BRADSHAW did knowingly or intentionally point a firearm, to-wit: a silver .380 caliber pistol, at Angila Chavez;

**COUNT VII**

On or about September 26, 2021, TYRONE DEWAYNE BRADSHAW did knowingly confine Angila Chavez without the consent of Angila Chavez, said TYRONE DEWAYNE BRADSHAW being armed with a deadly weapon, to wit: a handgun;

Appellant's App. Vol. II at 75.

[24] The alleged facts in the pointing-a-firearm charge are (1) Bradshaw (2) knowingly or intentionally (3) pointed a firearm (4) at Chavez. The facts in the confinement-while-armed charge are (1) Bradshaw (2) knowingly (3) confined, without the consent of, (4) Chavez, and (5) while being armed with a handgun. As I review the "means used to commit" the confinement-while-armed charge, I determine that the "while being armed with a handgun" is an element that is factually different from "pointing a firearm." We have long recognized the distinction between merely possessing a firearm and using a firearm. *Nicoson v. State*, 938 N.E.2d 660, 662 (Ind. 2010) (citing *Mickens v. State*, 742 N.E.2d 927, 931 (Ind. 2001)). There is no requirement under Indiana Code section 35-42-3-3(3)(A) that the State prove Bradshaw used the firearm in the commission of the crime to obtain a conviction. *See Mallard v. State*, 816 N.E.2d 53, 57 (Ind.

Ct. App. 2004). In *Mallard v. State*, the defendant confined a victim while he had a handgun in his pocket, but he did not show the victim the handgun or threaten to use it. *Id.* We affirmed the conviction because "the weapon was in his pocket at all relevant times and a jury could reasonably conclude that Mallard could have used the handgun as a deadly weapon." *Id.* Further, there is no requirement that a defendant has actual possession of the firearm during the course of the confinement to receive an elevated charge. *See Alvies v. State*, 905 N.E.2d 57, 62 (Ind. Ct. App. 2009). "[O]ur supreme court has held that an initial show of deadly force and the victim's awareness of the defendant's continued constructive possession of the weapon are sufficient to satisfy the 'armed with a deadly weapon' element." *Id.* (citing *Potter v. State*, 684 N.E.2d 1127, 1137 (Ind. 1997)). Therefore, under *Wadle*, I would end the analysis at step two and conclude there was no substantive double jeopardy violation. *See Wadle*, 151 N.E.3d at 249.

[25] However, in *A.W.*, our Supreme Court added a new layer of review in step two. That new layer asks courts to determine if there is any ambiguity in the two charging informations. As the Court later explained, ambiguity is determined if it is "conceivable" that a fact not included in the charging information could have happened. *A.W.*, 229 N.E.3d at 1070. The Court illustrated how this works in practice by reviewing *Harris v. State* 186 N.E.3d 604 (Ind. Ct. App. 2022). *A.W.*, 229 N.E.3d at 1069–70. In *Harris,* the State charged Harris with intimidation while armed and pointing a firearm. *Id.* at 1070. The charging information alleged that while the intimidation occurred, Harris "did draw or

use a handgun." *Id.* In *Harris*, the State argued that since the intimidation-while-armed charge did not include who the gun was drawn or used against, the facts on the charging information were different and the analysis should end with a conclusion that there is no double jeopardy violation. *Id.* The Court believed that the State's argument illustrated how step two of *Wadle* gives the State an asymmetrical benefit that could no longer be condoned. *Id.* This is so because it is also conceivable that the victim that the gun was "used or drawn" on could have been one and the same as the victim in the pointing-a-firearm charge. *Id.* In order to mitigate the asymmetrical benefit, our Supreme Court added the ambiguity/conceivability layer to the step two analysis. *Id.* at 1069.

[26] Although the Court stated more than once that in step two "[t]he factually included inquiry at this step is thus limited to facts on the face of the charging instrument," *A.W.* 229 N.E.3d at 1067, the new layer now requires us to consider what other facts are "conceivable," *id.* at 1070. If any conceivable facts from one charge include all the elements of the other charge, then the charging information is ambiguous and we must presume a double jeopardy violation. *Id.* at 1069. With this new guidance from *A.W.*, I agree with the majority's conclusion that the charging information is ambiguous. Because it is ambiguous, there is a presumptive double jeopardy violation; thus, we must proceed to step three of *Wadle. Id.*

[27] Before I proceed to step three, I need to explain why I find there is an ambiguity in the charging information. In the present case, unlike in *Harris*, we know the victim, Chavez, is the same victim in both counts. Also, unlike in *Harris*, the

confinement-while-armed statute requires the defendant to be "armed," which is different from *Harris*, where the charging information alleged that Harris "did draw or use" the gun. As explained previously, a person does not need to either "draw" or "use" a gun to be "armed" with a gun. So, why is the charging information ambiguous then? It is ambiguous because in the charging information for the confinement-while-armed charge it is conceivable that Bradshaw was not only armed but that, while he was armed, he could have been pointing a gun at Chavez. Therefore, the "means used to commit the crime charged," could have included "all of the elements of the alleged lesser included offense." *Id.* at 1067. Consequently, this charging information is ambiguous, and construing the ambiguity in favor of Bradshaw, I conclude a presumptive double jeopardy violation exists.[3] *See A.W.*, 229 N.E.3d at 1070.

[28] I now proceed to step three of *Wadle*, where I "examine the **facts underlying those offenses**, as presented in the charging instrument and as adduced at trial." *A.W.*, 229 N.E.3d at 1071 (emphasis in original) (quoting *Wadle*, 151 N.E.3d at 249). I believe the State has adequately rebutted the presumptive double jeopardy violation that resulted from the ambiguity at step two by showing a distinction between the two offenses charged. *See id.*

---

[3] I believe language similar to the following could have been used to avoid the determination that the charging information was ambiguous:

> On or about September 26, 2021, [BRADSHAW] did knowingly confine [CHAVEZ] without the consent of [CHAVEZ], said [BRADSHAW] being armed with a deadly weapon, to wit: a handgun, **to wit: by placing said handgun on his lap, but not pointing it at Chavez.**

[29] Here, I believe the facts at trial show two distinct offenses committed by Bradshaw. Bradshaw pointed the firearm at Chavez before the confinement began. Before Chavez went to her bedroom to get medication, Bradshaw told her that he would shoot her if she went near her gun. Bradshaw pointed the gun at Chavez while she was accessing the drawer next to her gun. Chavez got her medication and voluntarily walked back to her living room where she and Bradshaw both sat down.

[30] After they sat down, Bradshaw told Chavez that he would not let her leave. While he told Chavez she could not leave, Bradshaw had a knife or the gun "in his hands and both of them within reach at all times." Tr. Vol. II at 71. I believe the facts show that Bradshaw pointed the firearm before the confinement began and he committed the confinement without pointing the firearm at Chavez[4]. Additionally, although the State described the charges as "repetitive" in its closing argument, the State's description of the confinement charge only referenced possession of the gun and did not allege that Bradshaw confined Chavez by pointing the weapon.

[31] While this event happened over the course of one evening, it also happened over multiple hours. The first offense occurred almost immediately when

---

[4] It appears to me that the majority focuses too much of its attention on the prosecutor's closing argument. While the prosecutor talked about "repetitive" facts in closing argument, the prosecutor's arguments should not be the basis for determining a substantive double jeopardy violation. Counsels' arguments are not facts adduced at trial. *Gibson v. State*, 133 N.E.3d 673, 694 (Ind. 2019) (quoting *Piatek v. Beale*, 999 N.E.2d 68, 69 (Ind. Ct. App. 2013)).

Bradshaw pointed the gun at Chavez, and a distinct second offense occurred when he, while still armed with a weapon told Chavez that he would not let her leave. Thus, I believe these two offenses were not "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction" and no double jeopardy violation occurred. *A.W.*, 229 N.E.3d at 1071 (quoting *Wadle*, 151 N.E.3d at 249). Accordingly, I would affirm.